**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ernest Wesley RYKARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 23, 2012.

Filed Sept. 18, 2012.

Ernest W. Rykard, appellant, pro se.

Craig W. Stedman, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: BOWES, LAZARUS, and COLVILLE,* JJ.

OPINION BY BOWES, J.:

Ernest Wesley Rykard appeals *pro se* from the May 27, 2011 order dismissing his petition for post-conviction relief. Following a remand to determine the status of PCRA counsel, we affirm.

We previously delineated the history of this case as follows.

A jury convicted Appellant of felony murder due to his role in the execution-style killing of Shawn Hutchinson. The underlying facts involve a plan by Appellant and several cohorts to rob Mr. Hutchinson of two eight balls of crack cocaine. Specifically, on November 29, 2006, Appellant, Jacquin Carr, Barbara Hamm, and Lizyvette Rosario–Casanova were smoking crack cocaine.[1] As the group began to run low on the drug, they hatched a plan to rob someone to attain more drugs. They then encoun-

tered another individual, Rachel Rakita, who informed Appellant, Mr. Carr, and Ms. Rosario–Casanova that she could acquire more cocaine. Ms. Rakita placed a telephone call to Shawn Hutchinson and agreed to purchase two eight balls of crack cocaine from him. The group then drove to Hutchinson's apartment.

1. The record also refers to Ms. Rosario–Casanova as Rosario–Casanovo.

The group, except for Ms. Hamm, agreed that Ms. Rakita would lure Hutchinson outside so that they could rob him.[2] Once the victim was outside, Appellant and Mr. Carr seized the victim and Ms. Rakita returned to the vehicle. Mr. Carr held the victim's arms behind his back while Appellant held a silver small caliber handgun on the victim and searched him for the drugs. Ms. Rosario–Casanova ultimately removed an eight ball from the victim's back pocket. She then walked back toward the car and prevented Ms. Rakita from attempting to drive away. Mr. Carr remained behind holding the victim down while Appellant pointed the firearm at his head. Appellant then fired a shot into the victim's head, and he and Mr. Carr returned to the vehicle. Afterward, the group traveled to Appellant's sister's home where they proceeded to smoke the stolen crack cocaine. While at his sister's house, Appellant informed his nephews that he believed he killed somebody and showed them a bullet casing. After smoking crack, Appellant and Ms. Rosario–Casanova travelled to another house, where Appellant displayed the gun. Ms. Rosario–Casanova began to play with the weapon and caused it to jam. A short while later, Appellant disposed of the gun. Thereafter, police stopped Appellant and Ms.

* Retired Senior Judge assigned to the Superior Court.

Rosario–Casanova, and Ms. Rosario–Casanova was arrested and taken into custody. Police did not arrest Appellant at that time.

2. Ms. Hamm was apparently in and out of consciousness due to an intoxicated state and remained seated in the car through the incident.

The Commonwealth later arrested and charged Appellant with criminal homicide, robbery, and conspiracy to commit robbery. Following a jury trial wherein the Commonwealth tried Appellant and Mr. Carr jointly, the jury convicted Appellant of one count of felony murder.[3] The court sentenced Appellant to the mandatory term of life imprisonment. Appellant filed post-sentence motions, which the court denied. Thereafter, Appellant neglected to file a timely direct appeal, but filed a motion to reinstate his direct appeal rights *nunc pro tunc*. The trial court granted that request, and Appellant filed his direct appeal. This Court affirmed, *Commonwealth v. Rykard*, 976 A.2d 1214 (Pa.Super.2009) (unpublished memorandum), and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on November 30, 2009. *Commonwealth v. Rykard* [603 Pa. 709], 985 A.2d 219 (Pa.2009).

3. The jury was not charged on robbery or conspiracy to commit robbery.

Appellant timely filed a *pro se* post-conviction petition on October 25, 2010. The PCRA court appointed counsel and directed that he file an amended petition within forty-five days. Counsel, however, petitioned to withdraw and filed a no-merit letter pursuant to *Commonwealth v. Turner* [518 Pa. 491], 544 A.2d 927 (Pa.1988) and *Commonwealth v. Finley* [379 Pa.Super. 390], 550 A.2d 213 (Pa.Super.1988) (*"Turner/Finley"*), addressing the issues Appellant submitted in his *pro se* petition and an additional issue raised by Appellant at a meeting

he had with counsel. Additionally, counsel averred that he could not find any other issues of merit. The PCRA court agreed with counsel's assessment and issued a notice of intent to dismiss on December 27, 2010. Appellant, *pro se,* filed a petition for transcripts and a stay of proceedings to allow him to respond.[4] The court delayed issuing its final order and Appellant, after the lapse of the one-year jurisdictional time-bar, responded to the notice of dismissal on May 23, 2011. In his response, Appellant advanced ineffective assistance of PCRA counsel claims and several other issues not expressed in his original *pro se* petition. Thereafter, the court dismissed Appellant's petition. This appeal ensued. The PCRA court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he complied.

4. The docket sheet in the certified record indicates that on January 6, 2011, Appellant filed a petition for transcripts and stay of proceedings; however, no such petition is contained within the certified record on appeal. Similarly, the order of court granting the motion, noted on the docket, is absent from the certified record.

*Commonwealth v. Rykard,* 50 A.3d 235 (Pa.Super.2012) (unpublished memorandum) (filed May 7, 2012).

Although it appeared that the PCRA court allowed counsel to withdraw, no order was contained within the record expressly authorizing counsel's withdrawal. Accordingly, out of an abundance of caution, we remanded to the PCRA court for a determination as to counsel's current status in this case, but retained jurisdiction. The PCRA court conducted a hearing as directed. However, at the conclusion of that hearing it appointed new counsel for the purpose of filing a new amended PCRA petition. This Court voided that order as exceeding the scope of our limited remand and the PCRA court has indicated that *Turner/Finley*

counsel was permitted to withdraw.[1] The matter is now ready for review. Appellant raises five issues for our consideration.

I. Did the court commit an error of law when it dismissed Appellant's PCRA petition?

II. Was PCRA counsel ineffective for failing to investigate, raise and address all of the issues presented in Appellant's *pro se* PCRA petition and failing to do a proper independent review of the record?

III. Was PCRA and trial counsel ineffective for failing to raise and preserve for appellate review the *Brady* violation where the witnesses Lizyvette Rosario–Casanovo, Rachel Rakita and Barbara Hamm all had tacit agreements with the Commonwealth in exchange for their testimony and the District Attorney's Office had a duty to disclose said agreements to trial counsel, the court and the jury?

IV. Was trial counsel ineffective for failing to locate and develop an expert rebuttal witness to counter the erroneous findings of Commonwealth expert Dr. Wayne Ross?

V. Was trial counsel ineffective for failing to know what [a] defense witness was going to say?

Appellant's brief at 5.

 This Court recently delineated the governing precepts when reviewing a PCRA.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa.Super.2010). This review is limited to the findings of the PCRA court and the evidence of record. *Id.* We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. *Id.* This Court may affirm a PCRA court's decision on any grounds if the record supports it. *Id.* We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa.Super.2011). However, we afford no such deference to its legal conclusions. *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 442 (2011); *Commonwealth v. Reaves*, 592 Pa. 134, 923 A.2d 1119, 1124 (2007). Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Colavita*, 606 Pa. 1, 993 A.2d 874, 886 (2010).

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super.2012).

Appellant first challenges the PCRA court's decision to deny relief based on the *Turner/Finley* no-merit letter. According to Appellant, counsel did not comply with the dictates of *Turner/Finley*, and the court erred in allowing counsel to withdraw. Specifically, Appellant alleges that

---

**1.** Somewhat inexplicably, after voiding the appointment of counsel to file a new amended petition, the PCRA court purported to grant appointed counsel an extension of time to file the serial petition, which we explicitly held exceeded the scope of our remand. We add that *Commonwealth v. Maple*, 385 Pa.Super. 14, 559 A.2d 953 (1989), forbids appointment of new counsel where a proper *Turner/Finley* no-merit letter has been accepted and counsel was permitted to withdraw. *Maple, supra* at 956 ("when counsel has been appointed to represent a petitioner in post-conviction proceedings as a matter of right under the rules of criminal procedure and when that right has been fully vindicated by counsel being permitted to withdraw under the procedure authorized in *Turner*, new counsel shall not be appointed and the petitioner, or appellant, must thereafter look to his or her own resources for whatever further proceedings there might be.") (footnote omitted).

counsel did not address all of the issues he presented in his *pro se* petition and counsel neglected to independently raise other issues of merit. Additionally, Appellant argues that the PCRA court's wholesale adoption of counsel's *Turner/Finley* no-merit letter in its final order violates our Supreme Court's decision in *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999), in which our High Court held that a PCRA court's adoption of a Commonwealth brief in place of an independent opinion was improper.

Preliminarily, we note that Appellant's claim that the PCRA court erred as a matter of law in permitting counsel to withdraw, although necessarily discussing PCRA counsel's alleged ineffectiveness, is not an ineffectiveness claim. *See Commonwealth v. Pitts*, 603 Pa. 1, 981 A.2d 875, 889 n. 3 (2009) (Baer, J. dissenting). We also are cognizant that Appellant asserted this issue in his response to the PCRA court's notice of intent to dismiss.

 The Commonwealth contends that Appellant's issue is without merit. In support of its argument, the Commonwealth maintains that PCRA counsel complied with the instructions of *Turner/Finley*, the PCRA court certified that it independently reviewed the record, and the court determined that no purpose would be served by conducting an evidentiary hearing. Additionally, the Commonwealth points out that the PCRA court followed the requirements of Pa.R.Crim.P. 907 and provided Appellant with a notice of intent to dismiss before denying his petition.

 The *Turner/Finley* decisions provide the manner for post-conviction counsel to withdraw from representation. The holdings of those cases mandate an independent review of the record by competent

counsel before a PCRA court or appellate court can authorize an attorney's withdrawal. The necessary independent review requires counsel to file a "no-merit" letter detailing the nature and extent of his review and list each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court, or an appellate court if the no-merit letter is filed before it, *see Turner, supra,* then must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit. *See Pitts, supra* at 876 n. 1.

 In *Commonwealth v. Friend*, 896 A.2d 607 (Pa.Super.2006) *abrogated in part* by *Pitts, supra,*[2] this Court imposed additional requirements on counsel that closely track the procedure for withdrawing on direct appeal. Pursuant to *Friend,* counsel is required to contemporaneously serve upon his client his no-merit letter and application to withdraw along with a statement that if the court granted counsel's withdrawal request, the client may proceed *pro se* or with a privately retained attorney. Though Chief Justice Castille noted in *Pitts* that this Court is not authorized to craft procedural rules, the Court did not overturn this aspect of *Friend* as those prerequisites did not apply to the petitioner in *Pitts. See Pitts, supra* at 881 (Castille, C.J. concurring).

After the decision in *Pitts*, this Court held in *Commonwealth v. Widgins*, 29 A.3d 816 (Pa.Super.2011), that the additional procedural requirements of *Friend* were still applicable during collateral review. *Turner/Finley* counsel below fulfilled these added requisites. Moreover, the record evinces that counsel addressed all of the issues Appellant leveled in his pro se petition. Indeed, counsel discussed

---

**2.** The *Pitts* Court held that it is improper for an appellate court to *sua sponte* address the sufficiency of a no-merit letter filed before the

PCRA court. Since Appellant has properly presented the issue, *Pitts* does not serve as an impediment to our review in this respect.

an extra subject not broached by Appellant in his pro se filing. In addition, the PCRA court certified that it independently reviewed the record and agreed with counsel's legal assessment of the claims. Our review of the record confirms that the issues Appellant forwarded in his initial petition and the additional contention raised by counsel were without merit. In this respect, we note that Appellant stated all of his pro se allegations under the rubric of ineffective assistance of counsel. The first ineffectiveness issue Appellant sought to raise in his pro se petition related to a forensic pathology report that purported to show that the victim was alive when the pathologist removed the victim's organs. This contention stems from the testimony of an emergency room physician that the victim died at 11:00 a.m. on December 1, 2006 and the autopsy was conducted at 9:00 a.m. on December 1, 2006. Trial counsel did question the witness about this discrepancy. The record conclusively establishes that the victim died before his autopsy and that the doctor merely was uncertain as to the date. Accordingly, this issue was frivolous.

■ Next, Appellant argued that his due process, equal protection, and confrontation rights were infringed because the pathologist Dr. Wayne K. Ross falsely testified as to the cause of death and his testimony was inconsistent with an alleged report by Dr. Gary Kirchner. With respect to this averment, Dr. Ross prepared the autopsy report, conducted the examination, and testified that the cause of death was homicide. Furthermore, Dr. Kirchner did not testify and ample evidence was introduced to prove the victim died prior to the autopsy; thus, Appellant's position is devoid of merit.

Third, Appellant alleged violations of his constitutional rights based on the fact that the autopsy report lacking a time of death for the victim, that Dr. Gary Kirchner's testimony was inadmissible because he did not perform the autopsy, and Dr. Kirchner was not board certified and should not have been qualified as an expert. As noted, Dr. Kirchner did not testify and this issue is meritless.

The last allegation made by Appellant is equally unavailing. Appellant averred that the Commonwealth improperly introduced photographs of an individual who had been pistol-whipped to demonstrate that the victim herein did not suffer from those types of injuries.[3] This evidence was introduced because Appellant's defense was that he accidentally shot the victim while struggling over the gun and, while striking the victim, the gun went off. This Court affirmed the admission of these photographs on direct appeal, reasoning that the pictures were admissible to refute Appellant's defense that he fought with the victim and struck him with the gun, causing it to accidentally fire. As the evidence was admissible, counsel cannot be found ineffective for failing to object to its admission.

■ PCRA counsel also discussed an additional ground for relief in his *Turner/Finley* no-merit letter that was not delineated in Appellant's *pro se* petition. According to PCRA counsel, Appellant indicated at a meeting with counsel that trial counsel was ineffective in failing to call a witness. Appellant informed counsel that this witness could testify that he observed Appellant with a brown-handled gun and not a white-handled gun after the shooting. Based on his incorrect belief that another witness testified that the handle of Appellant's gun was white, Appellant, in a *non-*

---

**3.** Dr. Ross also utilized a photograph of the decedent in his testimony. Appellant does

not contest that evidence.

*sequitur,* confusingly represented that this testimony would show that the victim drew a gun first and that Appellant acted in self-defense. In his no-merit letter, counsel asserted that no witness described the handle of the firearm as white. Rather, the witnesses testified that the gun was silver or chrome. Hence, the color of the gun handle was irrelevant. The record supports counsel's position.

In sum, we agree that the issues Appellant presented in his *pro se* petition as well as the additional position addressed by PCRA counsel in his *Turner/Finley* no-merit letter do not entitle Appellant to relief. Insofar as Appellant references *Williams,* 557 Pa. 207, 732 A.2d 1167, in support of his position that the PCRA court impermissibly adopted counsel's no-merit letter and did not independently explain its rationale for dismissal, *Williams* did not involve a PCRA court's review of a *Turner/Finley* no-merit letter or defense counsel's assessment of the matter. Thus, *Williams* is inapposite. The PCRA court herein certified in both its Rule 907 notice and its final order that it reviewed the record and agreed with counsel's no-merit letter. This complies with the directives of *Finley.* Additionally, though not cited by Appellant, we are cognizant that in *Commonwealth v. Glover,* 738 A.2d 460 (Pa.Super.1999), this Court held that it was improper for a court to adopt an attorney's no-merit letter in lieu of an opinion. Herein, the court issued its own substantive Pa.R.A.P. 1925(a) opinion. Thus, this matter is distinguishable from *Glover, supra.*

 Appellant's next two claims raise allegations of ineffective assistance of PCRA counsel. Before discussing these positions, we must first determine if we are permitted to reach them. Pursuant to *Pitts, supra,* a petitioner waives issues of PCRA counsel's effectiveness regarding *Turner/Finley* requirements if he declines to respond to the PCRA court's notice of intent to dismiss. *Id.* at 880 n. 4. Unlike the petitioner in *Pitts,* Appellant herein challenged the propriety of the *Turner/Finley* no-merit letter in his response to the notice of intent to dismiss. More importantly, Appellant expressly complied with *Pitts* by setting forth allegations of PCRA counsel's ineffectiveness in his response to the court's pre-dismissal notice. Accordingly, both of Appellant's claims of PCRA counsel effectiveness are properly preserved, having been raised at the PCRA level in the first instance. *Compare Ford, supra.*

We recognize that the *Pitts* Court did not determine whether allegations of PCRA counsel ineffectiveness set forth in a response to a notice of intent to dismiss were to be considered a serial petition subject to the PCRA time-bar and the *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988), miscarriage of justice standard for subsequent petitions. *Cf. Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125, 1162 (2009) (Castille, C.J. concurring) ("By entertaining appellant's post-decisional complaint ... the PCRA court in essence approved a second collateral attack, this one focusing on initial PCRA counsel.... The PCRA court did not consider whether this circumstance implicated the time and serial petition restrictions of the PCRA or the *Lawson* miscarriage of justice standard."). Chief Justice Castille has consistently argued in favor of this view when such issues are posited for the first time on *appeal, i.e.,* after a final order has been entered. *See e.g. Commonwealth v. Moore,* 569 Pa. 508, 805 A.2d 1212 (2002) (Castille, J. concurring and dissenting); *Commonwealth v. Jones,* 572 Pa. 343, 815 A.2d 598 (2002) (OAJC); *Ligons, supra* at 1159–1171 (Castille, C.J. concurring).

Since the defendant in *Pitts* did not anticipate the mandatory procedure for raising PCRA ineffectiveness claims an-

nounced by the Court therein, the question of how to treat those types of issues was not before the Court, *i.e.,* whether the response constitutes a serial petition. Nonetheless, neither this Court nor a majority of the Supreme Court has held that asserting PCRA counsel ineffectiveness claims in response to a Rule 907 notice of dismissal amounts to a serial petition. We do note that, without discussion, this Court in *Commonwealth v. Ousley,* 21 A.3d 1238 (Pa.Super.2011), assumed that issues sounding in PCRA counsel ineffectiveness, submitted in a response to Rule 907 notice of dismissal, were not subject to the serial petition standard. *Id.* at 1244–1245 (addressing claim without citation to miscarriage of justice standard).

■■■ Unlike the case *sub judice,* the defendant in *Ousley* submitted his response before the one-year jurisdictional time-bar elapsed. Since the issue in this case implicates our jurisdiction, and we would have no authority to grant relief on an untimely claim, we may raise it *sua sponte. Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581 (1999). For the reasons that follow, we hold that a claim of PCRA counsel ineffectiveness set forth for the first time in a Rule 907 response to a notice of intent to dismiss during a petitioner's first PCRA proceeding is not a second or serial petition, nor is it an amended petition. Rather, the claim is more properly viewed as an objection to dismissal. *See Paddy, supra* at 471.

A response to a notice of dismissal and petitions have traditionally, and in practice, been viewed as distinct. *See* Pa. R.Crim.P. 907(1) (utilizing both phrases separately); *Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999) (***Batson*** claim proposed for first time in a response to pre-dismissal notice did not require PCRA court to address the issue and weighed in favor of disallowing an amended petition); *Commonwealth v. D'Amato,*

579 Pa. 490, 856 A.2d 806, 825 n. 19 (2004); *Paddy, supra* at 440 & 471 (Pa.2011) (treating response to a notice of dismissal as objections and not a new amended petition or serial petition); *Commonwealth v. Derrickson,* 923 A.2d 466, 469 (Pa.Super.2007).

Rule 907, which provides the requirement of a notice of intent to dismiss and allows for the optional filing of a response, states that a PCRA court may dismiss a petition, grant leave to file an amended petition, or direct that proceedings continue twenty days after the date of the notice of dismissal, including if a defendant responds to the dismissal. The rule does not treat a response to its notice of dismissal as either an amended petition or a serial petition.

The only mention of the language "second or subsequent petition" in the PCRA statute is found in section 9545(b), stating that "a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." The phrase "second or subsequent petition" also appears in Pa.R.Crim.P. 904, relating to appointment of counsel. Under Rule 904(D), "On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in Rule 908, the judge shall appoint counsel to represent the defendant." Thus, Rule 904(D) is aimed at petitioners in second or subsequent proceedings and not during an initial collateral attack where defendants are entitled to counsel. The phrase also appears in Rule 906(E)(2), which outlines when the Commonwealth must file an answer to a petition in a capital case. Similarly, the comment to Rule 909 discusses the second or subsequent petition language in the context of a second or subsequent PCRA proceeding

and the filing of a stay application in capital cases. Again, these references implicate a second or subsequent proceeding and not the first counseled death penalty challenge. Relatedly, the comment to Rule 901 states that the terms "petition for post-conviction collateral relief" and "petition" include amended petitions, unless the context indicates differently. Hence, amended petitions do not fall under the ambit of a second or subsequent petition.[4] *See also Commonwealth v. Tedford,* 566 Pa. 457, 781 A.2d 1167 (2001) (counseled petition filed after dismissal of a timely *pro se* petition without appointment of counsel is treated as an amended petition); *Commonwealth v. Williams,* 573 Pa. 613, 828 A.2d 981 (2003).

Though no definition appears in the statute or the applicable rules of procedure, it is evident that the term "second or subsequent petition" derives from our Supreme Court's decision in *Lawson.* The Supreme Court in *Lawson sua sponte* analyzed what it labeled as "the vexing problem of repetitive petitions" under the PCHA, the predecessor statute to the current PCRA. *Lawson, supra* at 108. The defendant in *Lawson* was on his fourth collateral proceeding.[5] The *Lawson* Court focused its discussion on the waiver and final litigation provisions of the PCHA and "problems posed by repetitive post-conviction petitions[.]" *Id.* at 110. The Court first concluded that "a second or any subsequent post-conviction request for relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred." *Id.* at 112. It continued by holding "that the mere assertion of ineffective assistance of counsel is not suf-

ficient to override the waiver and 'finally litigated' provisions in the P.C.H.A., as to permit the filing of repetitive or serial petitions under the banner of that statute." *Id.; but see Commonwealth v. Collins,* 585 Pa. 45, 888 A.2d 564 (2005) (holding that ineffectiveness claims are distinct from underlying issue).

Instantly, Appellant's claims were neither waived nor previously litigated. It would be logically impossible for Appellant to have argued the ineffective assistance of his post-conviction attorney in his *pro se* petition as he had not yet been appointed PCRA counsel. In addition, since petitioners are not authorized to pursue hybrid representation and counsel cannot allege his own ineffectiveness, claims of PCRA counsel ineffectiveness cannot ordinarily be raised in the state post-conviction proceeding below. As Appellant's post-conviction matter was his first and was not complete when he filed his response to the PCRA court's pre-dismissal notice, there was no completed prior post-conviction proceeding. Furthermore, only after counsel sought to withdraw was Appellant able to allege that his PCRA attorney was ineffective. Therefore, the rationale behind *Lawson* is not present where a defendant is raising, in a first-time PCRA proceeding at the PCRA court level, PCRA counsel's ineffectiveness.

In truth, the concern of *Lawson* and the principal case it relied upon, *Commonwealth v. Alexander,* 495 Pa. 26, 432 A.2d 182 (1981) (plurality), was with multiple post-conviction *proceedings.* The plurality in *Alexander* posited, "the PCHA explicitly contemplates a single post-conviction proceeding in no uncertain terms." *Alexan-*

---

4. In comments to both Rule 902 and Rule 907, the term appears in referencing the miscarriage of justice standard outlined by *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988).

5. The defendant in *Lawson* was awarded the reinstatement of his appellate rights after his first post-conviction hearing.

*der, supra* at 184. It specifically commented that allowing claims cloaked under ineffective assistance of counsel language "would further the proliferation of needless and wasteful *multiple post-conviction proceedings.*" *Id.* at 185 (emphasis added). However, the plurality reasoned that "if the ineffectiveness standard is to have any substance at all, it was necessary . . . to provide . . . at least one meaningful opportunity to have the underlying issues reviewed, at least in the context of an ineffectiveness claim." *Id.* at 186. In sum, the *Lawson* Court was not distressed with the submission of multiple petitions during an initial collateral attack. Although *Lawson* was handed down prior to the passage of the jurisdictional time-bar, the legislature, in crafting the one-year time limitation, adopted the "second or subsequent petition" language of *Lawson* and therefore its legally-understood meaning at that time. Both the criminal rules of procedure and the *Lawson* decision primarily reflect a concern over serial PCRA proceedings instituted by second or subsequent petitions.

It is evident that the original meaning of the "second or subsequent petition" language in the PCRA, at the time of its adoption, did not include a response to a notice of intent to dismiss. It is only as a result of *Pitts* that defendants were compelled to raise new PCRA counsel ineffectiveness claims in response to a notice of intent to dismiss.[6] Simply put, the General Assembly did not intend for the "second or subsequent" provision of the PCRA to apply to a response to a Rule 907 notice of intent to dismiss. Indeed, such a conclusion would be logically untenable as invariably, in the vast majority of cases, the permitted response would be filed after the one-year time deadline.[7]

The purpose behind a Rule 907 predismissal notice is to allow a petitioner an opportunity to seek leave to amend his petition and correct any material defects, *see Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 526 (2001), the ultimate goal being to permit merits review by the PCRA court of potentially arguable claims. The response is an opportunity for a petitioner and/or his counsel to object to the dismissal and alert the PCRA court of a perceived error, permitting the court to "discern the potential for amendment." *Id.* at 527. The response is not itself a petition and the law still requires leave of court to submit an amended petition. *See* Pa.R.Crim.P. 905(A). Hence, we conclude that a response to a notice of intent to dismiss is not a second or subsequent petition.[8] Since Appellant's response is not a second petition subject to the PCRA time-bar, and he objected to PCRA counsel's effectiveness at the PCRA level, we may proceed to analyze his arguments. *Compare Ford, supra.*

▮▮▮ Appellant first posits that PCRA counsel was ineffective in failing to investigate, raise and address all of the issues presented in his *pro se* PCRA petition and failing to independently review the record for additional claims. To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the

---

**6.** When the legislature amended the PCRA statute to include the "second or subsequent petition" language, defendants could raise PCRA claims of ineffectiveness for the first time while on appeal. *Commonwealth v. Albert,* 522 Pa. 331, 561 A.2d 736 (1989).

**7.** Defendants who submit untimely petitions, which are frequently disposed of without a

hearing and require a notice of intent to dismiss, still are permitted to file a response to a notice of dismissal.

**8.** This does not mean that a defendant may raise entirely new claims that he could have presented prior to his response to the notice of intent to dismiss. We discuss this issue in relation to Appellant's final two claims.

underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Commonwealth v. Chmiel,* 612 Pa. 333, 30 A.3d 1111, 1127 (2011). Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney. *Id.* at 1128; *see also Commonwealth v. Reyes,* 582 Pa. 317, 870 A.2d 888 (2005); *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003).

 Layered claims of ineffectiveness "are not wholly distinct from the underlying claims[,]" because "proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.]" *Collins, supra* at 584 (Saylor, J. concurring); *Reyes, supra* at 896 (proving three prong ineffectiveness test for trial counsel establishes arguable merit to appellate counsel's ineffectiveness). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Burkett, supra* at 1270.

 Appellant argues that Pa. R.Crim.P. 904, relating to the appointment of PCRA counsel, "includes the concomitant right to effective assistance of counsel." Appellant's brief at 11. Without citation to the record or pertinent authority, Appellant merely repeats his issue statement. The Commonwealth, for its part, relies on its argument relative to Appellant's first issue and submits that the record amply demonstrates that counsel properly addressed the claims Appellant raised in his *pro se* petition as well as one additional contention that was not set forth therein. We find that Appellant has waived his issue by neglecting to present appropriate argument and citation on appeal. *See Paddy, supra* at 448. Additionally, he has failed to establish his burden of proving ineffective assistance of counsel. Finally, we conclude that his position is meritless for the reasons outlined in our discussion of his first issue.[9]

Appellant also alleges PCRA counsel was ineffective in failing to assert trial counsel's ineffectiveness for neglecting to raise and preserve an alleged *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) violation. According to Appellant, Lizyvette Rosario–Casanova, Rachel Rakita and Barbara Hamm all had tacit agreements with the Commonwealth in exchange for their testimony, which the Commonwealth failed to disclose. Since Appellant has not forwarded any argument with regard to Ms. Rosario–Casanova, that aspect of his issue is waived. With respect to Barbara Hamm, Appellant argues that Ms. Hamm was arrested on December 6, 2005 in relation to this matter. When police apprehended her, they discovered a crack pipe in her possession. Appellant contends that the jury was entitled to hear that Ms. Hamm received a probationary sentence for possession of drug paraphernalia in exchange for her testimony.

Regarding Rachel Rakita, he maintains that although she testified that she did not expect any leniency in relation to her own charges arising out of the incident in this case, "she was rewarded by being permitted to plead guilty to third degree murder and received a sentence of six (6) to twelve

---

9. We further note that our Supreme Court has held that the *Turner/Finley* cases do not require "counsel launch into an extra-record investigation of every claim raised by a PCRA petitioner on collateral attack." *Commonwealth v. Porter,* 556 Pa. 301, 728 A.2d 890, 895 (1999).

(12) years for her role in the instant felony murder." [10] Appellant's brief at 14. Appellant posits that the concurring decision of Justice Papadakos in *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986), lends credence to his position that the witness would not have testified "without any indication of leniency[.]" Appellant's brief at 14.

In *Evans*, the majority remanded for a new trial after the trial court limited the cross-examination of a testifying co-defendant in a homicide trial and did not allow defense counsel to explore whether the witness had been promised or expected leniency in numerous unrelated criminal matters in exchange for his testimony. In his concurring decision, Justice Papadakos expressed concern over possible prosecutorial misconduct writing:

> The chief prosecution witness, David Crater, who was also a principal in the felony murder, testified that he had no expectations, and that no promises of leniency had been made to him by the District Attorney in exchange for his testimony. The District Attorney remained silent as to any "deal" that may have been made with the witness for his testimony, thus indicating to the jury that none had been made. Notwithstanding the fact that in addition to the criminal homicide, robbery and criminal conspiracy charges in the instant case, he also had ten to fifteen other burglary, theft and criminal conspiracy charges pending against him before the same District Attorney, to all of which he had pled not guilty. On the burglary charges alone, he could conceivably have received sentences totaling one hundred fifty years.

> However, after he testified in the instant action against his co-conspirators, he was "rewarded" by being permitted to change his plea from not guilty to the charge of criminal homicide to a plea of guilty to third degree murder. He received a sentence of six (6) to twelve (12) years for his role in the instant felony murder. He was also permitted to change his plea to guilty on all the other pending charges and received a total sentence of two (2) to four (4) years for all those charges, to run consecutive to the Ritchie sentence. I find this not infrequent practice of district attorneys sitting back and remaining silent while their witnesses perjure themselves appalling. Such reprehensible conduct should not be tolerated by our courts.

> I cannot bring myself to believe that this self-confessed conspirator in a killing and this perpetrator of many burglaries, "saw the light" and confessed his crimes without any indication of leniency from the Office of the District Attorney which would prosecute him *after he testified against* Nolen and Evans. What happened at Crater's trial and sentencing reeks of a "deal" having been made in exchange for his testimony against Nolen and Evans.

*Id.* at 633 (Papadakos, J. concurring) (emphasis in original).

The Commonwealth counters that Appellant's issue is waived because he neglected to raise it in his initial *pro se* petition. Appellant could not have alleged that PCRA counsel was ineffective in his *pro se* petition, as the court had not yet appointed him PCRA counsel. Furthermore, as discussed *supra*, Appellant followed the procedure outlined by the *Pitts* Court to preserve this issue and the claim is not being raised for the first time on appeal. Thus, we find the Common-

---

**10.** Public docket sheets indicate Ms. Rakita did, in fact, plead guilty to third degree murder in exchange for a sentence of six to twelve years and charges of robbery and criminal conspiracy were *nolle prossed.*

wealth's argument in this regard unavailing. The Commonwealth, however, also maintains that PCRA counsel cannot be held ineffective for declining to address an issue that Appellant never brought to his attention and was not apparent from the record. Lastly, the Commonwealth posits that Appellant has merely made boilerplate assertions of ineffectiveness without developing any meaningful argument in support of his positions.

 Public records indicate that Ms. Hamm was arrested on December 5, 2005 for an ungraded misdemeanor possession of drug paraphernalia and subsequently pled guilty almost a year prior to Appellant's trial. We fail to discern how there could be a reasonable probability that this would have affected Appellant's trial. Even absent Ms. Hamm's testimony, there was additional testimony implicating Appellant that was both consistent and cumulative of Ms. Hamm's testimony. Appellant's issue in this respect fails.

With relation to Ms. Rakita, contrary to Appellant's representation, Ms. Rakita testified, in response to Appellant's co-defendant's counsel's questioning, that although she did not have a formalized deal with the district attorney, she did expect to receive consideration and a benefit for testifying. N.T., 3/6/08, at 696. She also remarked that she was testifying to better her position. *Id.* at 697. In fact, the Commonwealth elicited testimony from Ms. Rakita that she was testifying to help herself. *Id.* at 714. Therefore, the jury was clearly apprised of Ms. Rakita's motive for testifying and Appellant's issue is meritless.

 In addition to his claims of PCRA counsel ineffectiveness, in his response to the PCRA court's notice of dismissal, Appellant added two new assertions of trial counsel ineffectiveness. Those issues are his fourth and fifth positions leveled in this appeal. We have previously discussed that a response to a notice of intent to dismiss

is not, itself, considered a serial petition. In *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999), the Court reasoned that the raising of a new (non-PCRA counsel ineffectiveness) claim after the PCRA court issued a notice of dismissal still requires a PCRA court to grant the petitioner leave to amend his petition. Notably, the Court opined, "The assertion of a new claim after the court has heard argument and indicated its intent to dismiss the petition militates in favor of the decision to deny leave to amend." *Id.* at 1191.

While Appellant was explicitly instructed that he could respond, and by law is authorized to file a response to the court's pre-dismissal notice, both *Williams*, 732 A.2d at 1191, and Pa.R.Crim.P. 905, suggest that in order to properly aver a new non-PCRA counsel ineffectiveness claim, the petitioner must seek leave to amend his petition. *See also Paddy, supra; Commonwealth v. Porter*, —— Pa. ——, 35 A.3d 4, 12 (2012) ("amendment is permitted only by direction or leave of the PCRA court."); *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806, 825 n. 19 (2004); *Derrickson, supra* at 469. Having not sought permission to amend his petition to raise these new claims, the PCRA court was not required to address the issues and it did not. Hence, Appellant's final two claims do not entitle him to relief. *Williams*, 732 A.2d at 1191.

Order affirmed.

Judge COLVILLE files a Concurring Opinion.

CONCURRING OPINION BY COLVILLE, J.:

I agree with the Majority's conclusion that the PCRA court and PCRA counsel complied with the *Turner/Finley* requirements. Regarding Appellant's claims that PCRA counsel rendered ineffective assis-

tance of counsel, I would find that he preserved these claims for appellate review by presenting them in his response to the PCRA court's notice of its intent to dismiss Appellant's petition without holding an evidentiary hearing. *Commonwealth v. Pitts*, 603 Pa. 1, 981 A.2d 875, 880 n. 4 (2009). I concur with the Majority's conclusion that these claims, as well as Appellant's claims regarding trial counsel's stewardship, do not entitle him to relief. Thus, I, too, would affirm the order dismissing Appellant's PCRA petition.