J-S35010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MANUEL GONZALEZ :
:
Appellant : No. 1405 EDA 2019

Appeal from the PCRA Order Entered May 1, 2019
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001329-2012

BEFORE: BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.: **FILED: JANUARY 8, 2021**

Manuel Gonzalez appeals *pro se* from the denial of his first Post-

Conviction Relief Act ("PCRA") petition. After careful review, we affirm.

The trial court previously summarized the relevant factual history of this

case as follows:

> On the night of October 21, 2011, Appellant was attending a social
> gathering at the residence of Darlene DeLeon, which is located
> near the intersection of Sixth and Gordon Streets in Allentown,
> Pennsylvania. Also attending this gathering were Manuel
> DeLaRosa (aka "Sencillo"), Ronald Diaz (aka "Mafia"), Eddie
> Herman (aka "Choko"), and Mario Nunez.
>
> At some point that night, Manuel DeLaRosa and Mario Nunez
> became involved in an altercation in front of Ms. DeLeon's
> residence with Kareem Lomax and Anthony Santiago. DeLaRosa
> and Nunez then chased Lomax and Santiago several blocks on
> foot. During the chase, either DeLaRosa or Nunez fired gunshots
> in the direction of Lomax and Santiago. After the altercation,
> DeLaRosa and Nunez returned to Ms. DeLeon's residence.

---

[*] Retired Senior Judge assigned to the Superior Court.

Thereafter, Appellant took possession of a handgun from Mario Nunez.

At some time later on the night of October 21, 2011, or in the early hours of October 22, 2011, Appellant, Manuel DeLaRosa, Ronald Diaz, Eddie Herman and Mario Nunez decided to leave that gathering at Ms. DeLeon's residence and drive to the south side of Allentown to attend another party and effectuate a sale of marijuana.  Mario Nunez drove the men in the blue Acura automobile he owned.

Around 2:00 a.m. on the morning of October 22, before driving to the south side of Allentown, Mr. Nunez stopped at the Sunoco gas station and minimarket located at the intersection of 12th and Hamilton Streets in Allentown.  Mr. Nunez stopped there to add gasoline to his automobile and to allow his passengers to purchase food and drinks at the minimarket.

While at the Sunoco parking lot, Appellant and his group encountered a group of approximately [thirty] to [forty] people. Appellant recognized several people in this group as members of the "Bloods" street gang.  This large group of people had just left a party at a nearby residence where the guests had been consuming alcohol.  Included in this large group were Kareem Lomax and the victim in this case, Devon Robinson.

Kareem Lomax saw the Appellant and the two shook hands. Though not friends, Lomax and Appellant were acquaintances and knew each other from living in the same neighborhood around 5th and Gordon Streets in Allentown.  Lomax also saw Manuel DeLaRosa and recognized him as one of the men who had chased him and fired gunshots in his direction a few hours earlier.  Lomax confronted DeLaRosa and questioned him about the incident.  As the two men argued, they were approached by Appellant, his group and the large group of people with which Lomax associated. Several men in Lomax's group, including Nelson Soler, possessed guns.  At one point, Soler pointed his gun in the direction of Appellant's group.  During the argument, DeLaRosa denied any involvement in the earlier altercation, but smirked and snickered at Lomax.  With this, Lomax threw a juice or iced tea he was holding at DeLaRosa and began to chase him through the parking lot.  This action precipitated a brawl between Appellant's group and Lomax's group.

During the brawl, Appellant initially attempted to pacify the belligerents and end the fighting. However, Devon Robinson approached Appellant and punched him in the head, knocking him to the ground. This act was met with laughter from the Lomax group. Appellant then stood up and began to chase Robinson while brandishing a handgun. Mario Nunez joined Appellant in chasing after Robinson. During the chase, Appellant fired a gunshot into the back of Robinson. Around the same time, Robinson and Appellant collided with an automobile attempting to back out of a parking spot and Robinson fell to the ground. Appellant was able to stay standing, but dropped his handgun. Nunez approached Robinson, who was still on the ground, and began to kick him in the face and chest. Appellant quickly retrieved his handgun, walked over to Robinson, stood over him and fired a gunshot into his head. Robinson died as a result of the initial gunshot into his back.

The entirety of the altercation described above was recorded on a wireless surveillance camera fixed at the intersection of 12th and Hamilton Streets by the Allentown Police Department.

After shooting Robinson, Appellant ran from the scene. Later on the morning of October 22, Appellant went to the residence of his girlfriend, Ambar Perez, located at 333 North Hall Street in Allentown. Appellant woke Ms. Perez and explained to her that he was in a fight and that he believed he may have badly hurt or killed someone. Ms. Perez was disturbed by this revelation and asked Appellant to leave her residence. Appellant complied and evaded authorities for approximately three and a half months.

Appellant ultimately returned to Ms. Perez's residence in February of 2012. On February 13, 2012, Officer Joseph Iannetta, a patrolman employed by the Allentown Police Department, executed an arrest warrant for Appellant at Ms. Perez's residence and Appellant was taken into custody. After being taken into custody, Appellant was interviewed at police headquarters by Detectives Joseph Vazquez and Stephen Milkovits of the Allentown Police Department. Appellant admitted being at the scene of the altercation and being punched by Devon Robinson. However, Appellant denied shooting Robinson.

Trial Court Opinion, 12/11/13, at 2-5.

Appellant was arrested and charged with criminal homicide. Trial counsel filed pretrial motions seeking to suppress various pieces of evidence, which were denied. A jury trial was held, at which the jury saw surveillance footage of the shooting and multiple eyewitnesses identified Appellant as the shooter. Appellant testified, admitting for the first time that he was the shooter. While he could not remember what transpired between when he was hit in the head and when he fired the last shot, Appellant nonetheless contended that he acted in self-defense. *See* N.T. Jury Trial, 7/12/13, at 912-13. Ultimately, the jury found Appellant guilty of third-degree murder. Following review of a pre-sentence investigation report, the trial court sentenced Appellant to a term of twenty to forty years of incarceration.

Appellant filed a direct appeal. Therein, he alleged that the Commonwealth committed prosecutorial misconduct during closing arguments, and also argued that the trial court erred by directing questions at Appellant while he was testifying and by prohibiting Appellant from questioning Commonwealth witnesses about their gang membership. This Court rejected Appellant's claims and affirmed his judgment of sentence, and our Supreme Court denied Appellant's subsequent petition for allowance of appeal. *See Commonwealth v. Gonzalez*, 113 A.3d 349 (Pa.Super. 2014) (unpublished memorandum), *appeal denied*, 117 A.3d 295 (Pa. 2015).

Appellant filed a timely counseled PCRA petition, alleging trial and appellate counsel ineffectiveness generally. He requested court assistance acquiring pre-trial discovery from trial counsel, since his letters requesting the

same had gone unanswered. After almost two years of proceedings surrounding whether PCRA counsel had shown the necessary extraordinary circumstances to entitle him to discovery in the PCRA context, PCRA counsel received the pre-trial discovery packet.[1] In January of 2019, PCRA counsel filed a **Turner**/**Finley**[2] no-merit letter, alleging that he had reviewed Appellant's file, the notes of testimony, and appellate pleadings. Based upon this review, he stated that Appellant wished to raise two claims: 1) that appellate counsel was ineffective for failing to raise a claim alleging that the evidence was sufficient to support his self-defense claim, and 2) that trial counsel provided ineffective assistance when he conveyed his assessment of the strength of the Commonwealth's case to Appellant. **See Turner**/**Finley** Letter, 1/3/19, at 4. PCRA counsel gave explanations of why each issue was meritless and further averred that his own review had uncovered no meritorious issues which could be raised in an amended PCRA petition. Accordingly, PCRA counsel served his letter on Appellant and sought leave to withdraw from the case.

On February 7, 2019, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition, indicating that it had conducted its own independent review and giving its reasons for agreeing with PCRA counsel's

---

[1] Also during this time, Appellant's petition was transferred to a new PCRA court after his trial judge retired.

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) *(en banc)*.

assessment that neither claim had arguable merit. The PCRA court also granted counsel's request to withdraw. Appellant responded with *pro se* objections to the Rule 907 notice, arguing that PCRA counsel failed to adequately investigate the issues Appellant wished to raise. However, Appellant did not specify what issues PCRA counsel had overlooked. The PCRA court denied the PCRA petition, noting that Appellant had not explained what the issues were that PCRA counsel failed to raise. This appeal followed. The trial court did not order Appellant to file a concise statement. Instead, the PCRA court satisfied Pa.R.Crim.P. 1925(a) by forwarding its Rule 907 order and the order dismissing the PCRA petition.

Appellant raises the following issues for our review:

1. Did trial, appellate counsel render deficient performance in critical aspects of the pre-trial, trial, sentencing, and direct appeal proceedings; and confidence in the outcome is undermined as a result, effectively establishing prejudice?

2. Did P.C.R.A. counsel, Craig M. Cooley, Esq., render ineffective assistance of counsel when issuing a **Turner/Finley/Friend** letter and petition to withdraw as counsel by stating that discovery was unavailable at the time of P.C.R.A. filing, yet had said discovery in his possession at all times?

Appellant's brief at 5 (capitalization corrected).

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." **Commonwealth v. Rykard**, 55 A.3d 1177, 1183

(Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." *Id*.

Appellant alleges layered claims of ineffective assistance of counsel ("IAC"). In reviewing IAC claims, counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *See Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. *Id*. The failure to establish any of the three prongs is fatal to the claim. *Id*. at 113.

Where a petitioner asserts a layered IAC claim he must argue each prong of the three-prong ineffectiveness test for each separate attorney. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011). As we have explained:

> Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim . . . . In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa.Super. 2012) (citations and quotations omitted).

In Appellant's first layered IAC claim, Appellant attacks appellate counsel's effectiveness after he failed to challenge the sufficiency of the evidence on the grounds that Appellant had established an affirmative defense. Appellant further alleges that PCRA counsel was ineffective for not litigating this issue.[3] *See* Appellant's brief at 9-10. In his *Turner*/*Finley* letter, PCRA counsel addressed Appellant's desire to raise a claim alleging that the evidence supported his self-defense theory, finding a layered sufficiency claim on these grounds to be meritless. *See Turner*/*Finley* Letter, 1/3/19, at 4-5. The PCRA court agreed, finding that the Commonwealth presented

_____

[3] Appellant asserts two additional layered claims of ineffectiveness for the first time on appeal, namely that PCRA counsel was ineffective in not claiming that: (1) trial counsel was ineffective for failing to "adequately present" a self-defense theory and (2) that appellate counsel was ineffective for failing to challenge the weight of the evidence on direct appeal. *See* Appellant's brief at 9-10. However, claims of PCRA counsel ineffectiveness cannot be raised for the first time on appeal. *See Commonwealth v. Vo*, 235 A.3d 365, 370 (Pa.Super. 2020); *see also Commonwealth v. Smith*, 121 A.3d 1049, 1054 (Pa.Super. 2015) citing *Commonwealth v. Ford*, 44 A.3d 1190, 1201 (Pa.Super. 2012) ("[A]bsent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter."). While Appellant did file a *pro se* response to the Rule 907 notice generally alleging PCRA counsel ineffectiveness for filing the *Turner*/*Finley* letter, he failed to detail either of these layered ineffectiveness claims in his response. *See* Objections to the Notice of Intent to Dismiss, 3/4/19. Accordingly, these claims are waived and we may not consider them here.

sufficient evidence to overcome Appellant's self-defense claim. ***See*** Rule 907

Notice, 2/7/19, at 2. We agree.

Our standard of review when considering a challenge to the sufficiency

of the evidence is:

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Gause***, 164 A.3d 532, 540-41 (Pa.Super. 2017)

(citations and quotation marks omitted).

Under Pennsylvania law, the justified use of deadly force requires three

separate elements, namely:

> a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger. The defendant has no "burden to prove" his self-defense claim. The Supreme Court explained the evidentiary burdens as follows:

> While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa.Super. 2014) (internal citations omitted); *see also Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa.Super. 2008) (same).

Once a defendant puts self-defense at issue, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. *See Commonwealth v. McClendon*, 874 A.2d 1223, 1229–30 (Pa.Super. 2005).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa.Super. 2008) (quoting *McClendon*, *supra* at 1230). The Commonwealth need establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa.Super. 2000). Accordingly, the Commonwealth can negate a self-defense claim if it proves that the defendant did not reasonably believe he was in imminent danger of death or great bodily injury. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012).

Here, Appellant put self-defense at issue through his own testimony, whereby he told the jury that he shot and killed Devon Robinson after a member of Robinson's group pointed a gun at members of his group and he was "sucker punched" in the head. N.T. Jury Trial, 7/12/13, at 900-02, 909-10. The punch knocked him to the ground and left him scared and disoriented. *Id*. at 914. Appellant did not realize what he had done until after he had already fired the second shot into Robinson's head. *Id*. at 918. Afterwards, Appellant fled from the scene, discarded the firearm, cut his hair, and took a bus to New York. *Id*. at 911, 944-47. Appellant asserted that he lied to the police about having a gun and shooting Robinson because he was afraid that the police would not be able to protect him from the "Bloods" street gang. *Id*. at 904, 912-13.

In contrast, the Commonwealth put forth eyewitness testimony and surveillance footage that showed that after being punched in the head, Appellant stood up and began to chase Robinson while brandishing a gun. During the chase, Appellant shot Robinson once in the back, causing him to fall to the ground. Appellant than stood over the unarmed victim and deliberately shot him once in the head before fleeing the scene. The eyewitness testimony and surveillance footage was corroborated by the Commonwealth's forensic pathologist who opined that the angle and range of the gunshot wound to Robinson's head was consistent with the shooter standing directly above him. *See* N.T. Jury Trial 7/10/13, at 272-75, 278-79.

Viewing the facts in the light most favorable to the Commonwealth, the PCRA court did not err when it found that the Commonwealth presented ample evidence to disprove that Appellant acted in self-defense. Indeed, chasing after a fleeing and unarmed Robinson, coupled with the locations of both gunshot wounds to the victim, contradicts Appellant's self-defense claims. Accordingly, appellate counsel was not ineffective when he failed to pursue a sufficiency claim on appeal. *See Commonwealth v. Williams*, 980 A.2d 510, 525 (Pa. 2009) ("[A]ppellate counsel cannot be deemed ineffective for failing to raise [a] meritless claim on appeal."); *see also* Rule 907 Notice, 2/7/19, at 2. No relief is due on Appellant's first issue.

In Appellant's second and final claim, he asserts that PCRA counsel was ineffective for failing to raise meritorious claims on the false grounds that discovery had not been provided to him. *See* Appellant's brief at 13-16. Stated simply, Appellant has misstated the record. For almost two years, PCRA counsel filed multiple requests for pre-trial discovery, indicating that he could not effectively represent Appellant without it. However, counsel acknowledged that he had received and reviewed discovery in the first sentence of his *Turner/Finley* letter. *See Turner/Finley* Letter, 12/31/18, at 1. PCRA counsel indicated that he had filed the letter because the claims that Appellant wished to raise in his PCRA petition were meritless, not because he did not have pre-trial discovery. *Id*. at 4. Accordingly, no relief is due on Appellant's second allegation of ineffectiveness.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/8/21