J-S31029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
MELANIE ANN RAY, :
:
Appellant : No. 2715 EDA 2013

Appeal from the PCRA Order Entered September 12, 2013,
In the Court of Common Pleas of Chester County,
Criminal Division, at No. CP-15-CR-0003370-2011.

BEFORE: BOWES, SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 20, 2014**

Appellant, Melanie Ann Ray, appeals from the denial of her second petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm.

The PCRA court, quoting from the notes of testimony, summarized the facts of the crime as follows:

> On August 6, 2011 [Appellant] and her co-defendant, Chandler Clark, conspired to murder Andre Dupuis in West Nottingham Township, Chester County, Pennsylvania during the course of a robbery of Mr. Dupuis' motor vehicle.

> The events which led to this crime began approximately three to four weeks prior in western Pennsylvania. [Appellant] and her co-defendant, Chandler Clark, are from Titusville, Pennsylvania. Both defendants were on parole and were facing violation hearings which could result in a sentence to state prison.

Approximately three weeks before the murder, [Appellant] traveled to Lancaster County to stay with a friend of hers. While she was living with her friend, she met Mr. Dupuis in a bar in Rising Sun, Maryland. [Appellant] got to know Andre and learned he was single, lived alone, and did not have any children.

Shortly before the murder, [Appellant] returned to her hometown where she met with Chandler Clark. The defendants then returned to the Delaware Valley with the intent to flee Pennsylvania together to avoid further prosecution for their parole violations.

On the night of the murder, Chandler Clark suggested to [Appellant] that they murder Andre to steal his truck. Andre was considered a perfect target by the defendants because he lived alone and worked out of the area. The defendants believed this would give them additional time to escape the area before anyone notice[d] Andre was missing.

[Appellant] contacted Andre and asked him for a ride to [Appellant's] friend's house in Lancaster County. Clark then told [Appellant] that she should fake being sick to get Andre to pull over so Clark could murder Andre. The defendants knew that the road they were taking on the way to her friend's house was desolate, with no houses nearby.

When Andre arrived to pick up [Appellant], she introduced Clark as her cousin. Andre willingly allowed the defendants into his truck, believing that he was driving them to Lancaster County, to her friend's house. At approximately 10:30 p.m., as Andre drove along Lees Bridge Road in West Nottingham, [Appellant] pretended to be sick. Andre pulled over on a section of Lees Bridge Road where there were no houses for at least a quarter of a mile in either direction.

When Andre stopped, [Appellant] got out of the truck and walked behind the truck where she pretended to throw up. Andre exited the truck and walked towards [Appellant] to check on her. Clark then exited the truck and met Andre at the rear of the truck. When Andre reached the rear of the truck, Clark pulled out a .40 caliber pistol and pointed it at Andre. He told

Andre, "Nothing personal. We need your keys and your truck." Andre turned around and attempted to get back into his truck. As he ran back, Clark shot Andre once in the back. Andre collapsed into the driver's seat of his truck. Clark then came around to the driver's side door and shot Andre a second time. The second shot went through Andre's neck, severing his spine. Andre died almost immediately after the second shot.

After Clark murdered Andre, [Appellant] checked Andre's pockets, looking for his wallet. Clark then pushed Andre's body down an embankment, where it was discovered by a passing motorist the next morning.

THE COURT: Did they take his wallet?

[THE PROSECUTOR]: They could not find his wallet. In fact, your Honor, that was the way the state police were able to identify Mr. Dupuis so quickly was [the defendants] were unable to find his wallet.

Immediately following the murder, the defendants took Andre's truck and fled the area. They first drove south towards Baltimore. They then turned northwest and reentered Pennsylvania to get onto the turnpike. When they reached the Breezewood entrance to the turnpike, they stopped at a local convenience store to get money. The defendants entered the convenience store and gave the clerk a bad check, so that [Appellant] and Clark could continue west.

On August 8, 2011 investigators located the defendants in Indianapolis, Indiana, where they were staying with a friend of [Appellant's]. When the defendants were arrested, they were in possession of Andre's truck as well as the pistol used to murder Andre.

Both defendants gave statements to the Pennsylvania State Police. [Appellant] admitted to the investigators that she needed to leave Pennsylvania because she had criminal charges pending which would have resulted in a state parole violation. She stated that she and Clark drove from their hometown to the Harrisburg Airport in a car stolen from Clark's father. They abandoned the car at the airport to make it look like they left

Pennsylvania on a plane. They then continued on to Rising Sun, Maryland by getting a ride from [Appellant's] friend.

[Appellant] admitted that a couple days prior to the murder, Clark suggested that they murder someone to steal their truck. [Appellant] told Clark at that time about Andre, noting that he lived alone, did not have any kids, worked in Philadelphia and sometimes did not see his family for a week. On the night of the murder, Andre contacted [Appellant] to hang out with her. At that time the defendants put their plan into action. When [Appellant] arranged for Andre to meet them in Rising Sun, she knew that they planned to steal Andre's truck. She knew that Clark planned to murder Andre. And she knew that she was going to fake illness to get Andre to stop the truck in a desolate area where Clark could murder Andre.

PCRA Court Opinion, 10/31/13, at 1–4.

Appellant was charged with murder, conspiracy to commit murder, robbery of a motor vehicle, theft by unlawful taking, and possession of instruments of crime on September 19, 2011. On May 16, 2012, Appellant entered a negotiated guilty plea to second degree murder and was sentenced to life imprisonment. All other charges were withdrawn. Appellant did not file an appeal from the judgment of sentence.

On August 16, 2012, Appellant sent a letter to the trial court stating that she desired counsel "to file a PCRA . . . . and due to the circumstances, will need other representation to do so," which the common pleas court treated as a *pro se* PCRA petition. Letter, 8/16/12, docket entry 25; PCRA Court Opinion, 10/31/13, at 4. On August 17, 2012, the court appointed counsel to represent Appellant. Appointed counsel wrote to Appellant on

September 7, 2012, requesting that she identify the issues she sought to pursue in her petition. Getting no response,[1] counsel filed a petition for leave to withdraw as PCRA counsel, pursuant to the standards set forth in *Commonwealth v. Turner*, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), on October 5, 2012. The PCRA court determined counsel complied "with the mandates of" *Turner* and *Finley*, conducted "an independent review of the record" and concluded that Appellant's "first *pro se* PCRA petition had no merit." PCRA Court Opinion, 10/31/13, at 4.

On October 8, 2012, the PCRA court issued a notice of intent to dismiss the PCRA petition. Appellant did not file a response. Accordingly, on November 14, 2012, the PCRA court dismissed the petition and granted the petition for leave to withdraw as PCRA counsel. Appellant did not appeal the November 14, 2012 order.

Appellant filed a second *pro se* PCRA petition on February 28, 2013, again in the form of a letter to the court, alleging that first PCRA counsel rendered ineffective assistance and requesting the appointment of new PCRA counsel. Letter, 2/28/13, docket entry 30. On March 8, 2013, the PCRA court treated the second letter as a second *pro se* PCRA petition, denied the

---

[1] While Appellant states that she did indeed respond, the PCRA court credited PCRA counsel's statement that he never received a response. PCRA Court Opinion, 10/31/13, at 4.

request for court-appointed counsel, and ordered the Commonwealth to file an answer. PCRA Court Opinion, 10/31/13, at 5. The Commonwealth filed an answer on April 15, 2013. The PCRA court determined that the PCRA petition was timely[2] and on May 17, 2013, directed Appellant to file an amended petition. Appellant filed the amended PCRA petition on June 21, 2013. On August 22, 2013, the PCRA court filed a notice of intent to dismiss the petition, and Appellant filed a response on September 5, 2013.

The PCRA court dismissed the petition on September 12, 2013. Appellant filed the instant timely appeal; both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I. Whether Plea Counsel and the Court erred in failing to order a Mental Health Evaluation.

II. Whether First PCRA Counsel was ineffective.

III. Whether informal documents should be treated as petitions and grounds for Court action.

IV. Whether Second PCRA Petition should be dismissed without being properly submitted before the Court for formal review.

---

[2] A PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). The record reflects that Appellant did not seek review to this Court following the imposition of sentence on May 16, 2012. Accordingly, Appellant's judgment of sentence became final on June 15, 2012, when the time for filing a notice of appeal expired. 42 Pa.C.S. § 9545(b)(3). Here, a PCRA petition had to have been filed within one year of the date that the judgment of sentence became final, which was June 15, 2013. As the instant PCRA petition was filed on February 28, 2013, it was timely.

Appellant's Brief at 3.

Our standard of review from the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. ***Commonwealth v. Baumhammers***, 92 A.3d 708 (Pa. 2014). "This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations." ***Commonwealth v. Timchak***, 69 A.3d 765, 769 (Pa. Super. 2013) (quoting ***Commonwealth v. Anderson***, 995 A.2d 1184, 1189 (Pa. Super. 2010)). "To be eligible for relief, a PCRA petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances enumerated in Section 9543(a)(2) of the PCRA, and that the allegation of error has not been previously litigated or waived." ***Baumhammers***, 92 A.3d at 714.

The PCRA court concluded that all of the claims Appellant raised in her second PCRA petition and Pa.R.A.P. 1925(b) statement were:

> waived by virtue of her failure to respond to our twenty (20) day Notice of Intent to Dismiss issued in connection with her first PCRA Petition. The time to object to PCRA counsel's stewardship was during the twenty (20) day period after we issue our Rule 907(1) Notice. Because she could have raised all of her present issues in her prior state post conviction proceeding but chose not to, an omission we note she has not explained in any of her

subsequent pleadings, she has waived all of her present issues for purposes of her second PCRA and instant appeal. 42 Pa. C.S.A. §§ 9543(a)(3), 9544.

PCRA Court Opinion, 10/31/13, at 10.

The Commonwealth concurs and reiterates the PCRA court's determination that all of the claims are waived for failure to raise them in a response to the notice of intent to dismiss Appellant's first PCRA petition and failure to file an appeal from the order dismissing her first PCRA petition. Commonwealth's Brief at 10.

> To be eligible for post-conviction relief, Appellant must show "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3). Section 9544 of the PCRA defines "waived" as follows:
>
> * * *
>
> (b) Issues waived.—For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding.

42 Pa.C.S. § 9544.

We agree that Appellant's underlying guilty-plea-counsel-ineffectiveness claim is waived for failing to raise it before the PCRA court in a *pro se* petition and that her derivative PCRA-counsel-ineffectiveness claim is waived for failing to assert it in her response to the PCRA court's Pa.R.Crim.P. 907 notice. As we stated in **Commonwealth v. Rigg**, 84 A.3d 1080, (Pa. Super. 2014):

In [**Commonwealth v.**] **Rykard**, [55 A.3d 1177, 1183 (Pa. Super. 2012)] **supra**, we outlined both the proper procedure for raising trial counsel ineffectiveness claims not originally included in a *pro se* petition where counsel files a **Turner/Finley** no-merit letter, as well as the mode for preserving a claim of PCRA counsel ineffectiveness.

* * *

Where the petitioner does not seek leave to amend his petition after counsel has filed a **Turner/Finley** no-merit letter, the PCRA court is under no obligation to address new issues. **Rykard**, **supra**; **see also** [**Commonwealth v.**] **Williams**, [732 A.2d 1167 (Pa. 1999)] **supra** at 1191. In contrast, where the new issue is one concerning PCRA counsel's representation, a petitioner can preserve the issue by including that claim in his Rule 907 response or raising the issue while the PCRA court retains jurisdiction. **See also** [**Commonwealth v.**] **Pitts**, [981 A.2d 875, 879 n.3, 880 n.4 (Pa. 2009)] **supra**; **Commonwealth v. Ford**, 44 A.3d 1190 (Pa. Super. 2012). Since Appellant did not seek leave to amend his petition or otherwise preserve his trial counsel and PCRA counsel ineffectiveness claims, he waived the issues he raised for the first time in his Pa.R.A.P. 1925(b) statements. Further, the court cannot have erred in declining to allow Appellant to amend his petition where he never sought that relief before the PCRA court.

*Id*. at 1084, 1085 (footnote omitted). The issues of plea counsel's and PCRA counsel's ineffectiveness, as presented herein in issues I and II, were never presented to the PCRA court and, therefore, are waived. **Id**.[3]

Appellant suggests in issue III that her letters to the PCRA court requesting counsel to file a PCRA petition should not have been treated as

---

[3] Assuming, *arguendo*, the issues regarding ineffectiveness were not waived, the PCRA court addressed them in its complete and thorough Pa.R.A.P. 1925(a) opinion, and we would adopt its reasoning as our own if we were addressing their merits.

PCRA petitions. Our review of Appellant's claim indicates that her brief lacks any argument; instead, it merely consists of two paragraphs setting forth the procedure surrounding the filing of the letters to the court. As such, Appellant waived appellate review where she cited no legal authorities in her appellate brief and did not develop any meaningful analysis. ***Commonwealth v. McLaurin***, 45 A.3d 1131 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013).

In her final issue, Appellant suggests that the PCRA court erred in dismissing her petition because she "did not know a response [to the PCRA court's twenty-day Pa.R.Crim.P. 907 notice] was required . . . ." Appellant's Brief at 11.[4] As we have consistently made clear, "Pennsylvania appellate courts . . . long have recognized that we must demand that *pro se* litigants comply substantially with our rules of procedure." ***Commonwealth v.***

---

[4] **Rule 907. Disposition Without Hearing**

\* \* \*

(1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. **The defendant may respond to the proposed dismissal within 20 days of the date of the notice**. . . .

***Spuck***, 86 A.3d 870, 874 (Pa. Super. 2014). On October 8, 2012, when the PCRA court issued its notice of intent to dismiss the PCRA petition, Appellant did not file a response. At that point, appointed counsel had filed his ***Turner/Finley*** brief and had notified Appellant of her rights and responsibilities according to the dictates of those cases, but she had not responded. Thus, she effectively was proceeding *pro se* at that point, and she was required to comply with our rules of procedure, despite her *pro se* status. ***Spuck***. We reject this issue as lacking in merit.

For the foregoing reasons, we conclude the issues raised in this appeal lack merit. Thus, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2014

-11-