J-S30004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANNY R. CRUZ, | |
| Appellant | No. 1872 MDA 2016 |

Appeal from the PCRA Order October 7, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005534-2013

BEFORE:  SHOGAN, RANSOM, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 25, 2017**

Appellant, Danny R. Cruz, appeals from the order entered October 7, 2016, denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

A previous panel of this Court summarized the factual and partial procedural history of this case as follows:

> On October 5, 2013, Carlos Dipres went with his friends Rafael Sanchez and Maritza David to a dance club, Anastacia's, on Sixth Street in Harrisburg to dance and listen to the band in which another friend was a DJ.  As Mr. Dipres walked to the bar to order a drink, Orlando Ayuso-Rivera ("Ayuso-Rivera") accompanied by Appellant, tapped him on the shoulder.
>
> Mr. Dipres' acquaintance with Ayuso-Rivera dated back to 1997.  In 1997, on two consecutive evenings, Mr. Dipres loaned his car to his then brother-in-law and Ayuso-Rivera, who told Mr. Dipres they needed the car to meet dates.  At the time, Mr. Dipres was moving his residence and left [belongings], including a shotgun used for hunting, in the trunk of the car.  On the

second night of their use of the car, Ayuso-Rivera and the brother-in-law did not return. Mr. Dipres saw police officers and K-9 dogs surrounding the brother-in-law's home a few blocks away. Mr. Dipres approached the scene and told officers he was there to pick up his vehicle. Officers arrested Mr. Dipres, believing that he participated in robberies of fast food restaurants on the two previous nights in which the vehicle was used.

Mr. Dipres told police that he was not present at the robberies. Mr. Dipres instead became a witness after the Commonwealth charged Ayuso-Rivera with the robberies. Mr. Dipres testified against Ayuso-Rivera at trial following which a jury convicted Ayuso-Rivera.

Mr. Dipres next saw Ayuso-Rivera in 2010 at a shopping plaza in Harrisburg. Ayuso-Rivera expressed anger toward Mr. Dipres, who sought to avoid further confrontation. Dipres saw Ayuso-Rivera again in 2013, three months before the incident at issue.

Before the incident, Dipres knew Appellant only by way of a few casual encounters in the community.

On the night of this incident, October 5, 2013, accompanied by Appellant, Ayuso-Rivera tapped Dipres on the shoulder and indicated he wanted to fight. Security told them to take it outside. Before Dipres followed Ayuso-Rivera outside, he handed his cell phone and keys to his friend Rafael Sanchez and instructed him to call the police. Dipres told Sanchez that people were calling him "a rat" and "a snitch".

Before leaving the club, Dipres did not see a gun. Dipres had a knife, but did not take it out because he believed he was going to have a fistfight with Ayuso-Rivera. Mr. Dipres stepped outside to the parking lot. A group of approximately ten men followed Ayuso-Rivera and Appellant.

Ayuso-Rivera and Appellant separated from the group and went to a car. Appellant returned with a gun.

Having returned from the car with Appellant, Ayuso-Rivera called Dipres "a rat" and "the snitch who wanted to ruin someone's life", stating, "yeah, he's the snitch, he's the snitch."

The group of men who surrounded Dipres began brutally beating him with bottles, a metal object, and punches and kicks to the head.

Appellant approached the crowd and fired one shot which caused the group to scatter. Appellant then stepped back and shot Dipres four times at close range. Dipres was conscious the entire time and saw Appellant shoot him.

Rafael Sanchez testified that he went outside to the parking lot and he saw the group punching and kicking Dipres. He began to intervene but stopped when he saw Appellant with the gun.

Officer Christopher Silvio responded to the scene where he saw people frantically waving and pointing to Mr. Dipres. The officer observed that Mr. Dipres had been shot and was bleeding profusely. Emergency personnel transported Mr. Dipres to the Hershey Medical Center. Officer Silvio testified that in the ambulance, Mr. Dipres stated that the shooter approached him and said something to the effect of "you're the snitching bitch" or "I know you're the snitching bitch."

Dipres suffered a broken nose, wounds to the head from pistol whipping, and gunshot wounds to the elbow, thigh and torso which required surgery . . . .

Although he did not know Appellant's name at the time, Dipres identified him in a police photo array as the person who shot him. Mr. Dipres stated that he could not remember Appellant's name but could never forget his face. Rafael Sanchez also identified Appellant in a photo array and at trial as the shooter.

The jury viewed video surveillance film taken at Anastacia's on the night of the incident. The film depicts Appellant in a private conversation with Ayuso-Rivera in the crowded club then the two approaching Mr. Dipres. Appellant stood close to Ayuso-Rivera as he spoke to Mr. Dipres shortly before the shooting.

A jury convicted Appellant of criminal attempt–murder of the first degree, aggravated assault, criminal conspiracy–aggravated assault, criminal conspiracy–firearms not to be

- 3 -

carried without a license, possession of a firearm prohibited, and retaliation against witness or victim.[1]  The trial court sentenced Appellant to an aggregate term of $10^1/_2$ to 23 years' incarceration.  Appellant filed a post-sentence motion, which the trial court denied.  [A] timely appeal followed.

> [1]  18  Pa.C.S.A.  §§  901;  2702(a)(1);  903(c); 6105(a)(1); and 4953(a), respectively.

> [2] The trial court vacated the conviction of possession of a firearm prohibited prior to sentencing.

***Commonwealth v. Cruz***, 141 A.3d 587, 537 MDA 2015 (Pa. Super. filed February 5, 2016) (unpublished memorandum).

This Court affirmed Appellant's judgment of sentence on February 5, 2016.  ***Id.***  Appellant did not petition the Pennsylvania Supreme Court for allowance of appeal.

On March 21, 2016, Appellant filed a *pro se* PCRA petition.  PCRA counsel was appointed on April 4, 2016.  On May 3, 2016, PCRA counsel filed a no-merit letter and request to withdraw.  On September 16, 2016, the PCRA court entered a notice of intent to dismiss and granted counsel's request to withdraw.  Appellant submitted a response on September 29, 2016.  The PCRA court dismissed Appellant's PCRA petition on October 7, 2016.  Appellant filed a notice of appeal on November 7, 2016.[1]  Both Appellant and the trial court complied with Pa.R.A.P. 1925.[2]

_____

[1] Because the thirtieth day of the appeal period, November 6, 2016, fell on a Sunday, Appellant had until Monday, November 7, 2016, to file his notice of appeal.  ***See*** 1 Pa.C.S. § 1908 (stating that, for computations of time,
*(Footnote Continued Next Page)*

Appellant presents the following issue for our review:

1. Was PCRA counsel ineffective for not raising trial counsel's ineffectiveness for failing to object to the sentencing judge confusion of which defendant that he was actually sentencing.

Appellant's Brief at vi (verbatim).

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*.

When considering an allegation of ineffective assistance of counsel ("IAC"), counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) petitioner was prejudiced by counsel's action or omission. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show

*(Footnote Continued)* ───────────

whenever the last day of any such period shall fall on Saturday or Sunday, or a legal holiday, such day shall be omitted from the computation); *Commonwealth v. Green*, 862 A.2d 613, 618 (Pa. Super. 2004).

[2] The PCRA court filed a statement in lieu of a memorandum opinion on December 19, 2016.

that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any one of the three prongs. *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013). "The burden of proving ineffectiveness rests with Appellant." *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007).

"Where the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney." *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012).

> Layered claims of ineffectiveness are not wholly distinct from the underlying claims, because proof of the underlying claim is an essential element of the derivative ineffectiveness claim. In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

*Id.* (internal citations and quotation marks omitted).

Appellant argues that during his sentencing, the trial judge confused him with his co-defendant, Ayuso-Rivera, by either sentencing him as if he was his co-defendant, or by sentencing him as if he had the same history with the victim. Appellant's Brief at 4. Appellant asserts that, as a result, he received a longer sentence than the judge would have otherwise imposed. *Id.* Appellant maintains that trial counsel was ineffective for

failing to object to the trial judge's mistake. *Id.* at 7-8. Specifically, "Appellant contends that he suffered prejudice from trial counsel's failure to object to the judge's misunderstanding that it was him who had past associations with the victim, when in fact it was his co-defendant who had a past history with the victim." *Id.* at 7. Appellant further argues that PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness. *Id.* at 8.

We find Appellant's argument that the trial court mistook Appellant for his co-defendant, or that it perceived Appellant as having the same history with the victim as co-defendant, to be unpersuasive. At the sentencing hearing, it was made clear that there was a presentence investigation report as well as a defense presentence investigation report prepared on Appellant in this case. N.T., Sentencing Hearing, 1/26/15, at 2. "[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Bricker*, 41 A.3d 872, 876 n. 9 (Pa. Super. 2012). Additionally, the Commonwealth and defense agreed that the conviction at Count four should be vacated, which resulted in an amended prior record score. N.T., Sentencing Hearing, 1/26/15, at 3. The trial court indicated that in sentencing Appellant, it considered the amended prior record score, "read the presentence report, read the

presentence mitigation memorandum, the letters, [and] attachments." *Id.* at 5. Thus, we conclude that the trial court properly sentenced Appellant and had significant information upon which to do so.

Moreover, upon review of the sentencing hearing transcript, it is clear that the trial court did not mistake Appellant for his co-defendant or conclude that Appellant had the same history with the victim as did co-defendant. Rather, the court's comments regarding what happened ten to twelve years ago were made in reference to Appellant's motivation for involvement in this crime as related to his relationship with Ayuso-Rivera. N.T. (Sentencing), 1/26/15 at 5-6; N.T. (Jury Trial), 10/20/14 at 71-72. Additionally, the trial court clearly understood that Appellant was the individual who shot the victim, which conclusion was consistent with the facts established at trial. N.T. (Sentencing), 1/26/15, at 6; N.T. (Jury Trial), 10/20/14 at 70, 75-76, 189. Accordingly, we cannot agree with Appellant's assertion that the trial court issued a longer sentence due to its misapprehension regarding Appellant's identity or history with the victim.

Because we conclude that the trial court did not err in sentencing Appellant, we cannot agree that trial counsel was ineffective for failing to object to the trial court's alleged mischaracterization of Appellant. Accordingly, there is no arguable merit to this claim. Thus, the first prong of the three-pronged ineffectiveness test has not been met. *Spotz*, 84 A.3d at 311.

Furthermore, because trial counsel was not ineffective, appellate counsel cannot be deemed ineffective for failing to raise trial counsel's ineffectiveness.

> To establish the arguable merit prong of a claim of appellate counsel ineffectiveness for failure to raise a claim of trial counsel ineffectiveness, the petitioner must prove that trial counsel was ineffective under the three-prong [ineffectiveness] standard. If the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the [ineffectiveness] test as applied to appellate counsel.

***Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011). Accordingly, Appellant's claim fails.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2017