J-S73042-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL MCKENZIE, | : | |
| | : | |
| Appellant | : | No. 808 MDA 2017 |

Appeal from the PCRA Order April 28, 2017
in the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000409-2012

BEFORE:    OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:         **FILED FEBRUARY 14, 2018**

Paul McKenzie (Appellant) appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The underlying case stems from Appellant's violent sexual assault of K.N., a woman with whom he had a sexual relationship prior to the assault. In Appellant's direct appeal of his judgment of sentence, this Court recounted the procedural history and facts as set forth by the trial court.

> In this case, K.N. testified that Appellant strangled her multiple times to the point of losing consciousness. The first time he strangled her was with his hands, the second time was with his t-shirt that he had taken off and twisted into a straight line and then wrapped it around her neck, and the third time was with a shoelace he had removed from one of his sneakers. While Appellant was strangling K.N with the shoelace, she tried to get her fingertips underneath the shoelace so she could get some air. K.N. also testified that Appellant punched her in her head - behind the ears, on top of the head, and around her forehead. K.N. tried

*Retired Senior Judge assigned to the Superior Court.

to block the blows by putting her hands over her head. Appellant also punched her in her back to get her to release her hands so he could continue punching her in the head. K.N. also testified that Appellant shoved his fingers up inside her vagina so hard that it pushed her back against the wall. K.N. also testified that Appellant raped her twice during this ordeal.

When K.N. tried to get away, Appellant caught up with her, grabbed her by her hair and around the neck, and dragged her back to the room. The next thing K.N. remembered was Appellant standing over her and taking his shoelace out of his shoe, telling her that "now you really f***ed up." Furthermore, throughout the entire ordeal, Appellant kept telling K.N. that "it was time to die," that he was going to kill her, and that she was going to die.

K.N.'s account of what occurred on November 4, 2011 into November 5, 2011[,] was corroborated by the injuries that were documented by Geneva Keirn, the SAFE Nurse at York Hospital. Ms. Keirn prepared body maps of those injuries and also took photos of the injuries sustained by K.N. The kinds of injuries found on K.N. were:

- Abrasions and scratches to her chest;
- Her left eye had redness to the inner area of the white of her eye, redness and blood in the sclera and around the eye;
- Her back had swelling and redness;
- Her buttocks had swelling and redness;
- Her scalp had redness, pain and tenderness;
- Her genital area had lacerations, redness, and tenderness; abrasions to the labia and bottom of the vagina;
- Her left arm had redness;
- Her right arm had abrasions and scratches;
- Her left leg had swelling and redness, and red marks on her left upper thigh area and left lower leg;
- Her left knee had red marks and abrasions and bruising;
- Her right leg had swelling and redness;
- Her right knee had abrasions and red marks;
- Her right hand had swelling and redness to top of hand and fingers;

- Her left hand had redness to all fingers extending to the palm and down to the thumb. There was redness, swelling, and purplish marks to her left thumb and parts of her left index finger;
- The top of her left hand had redness and swelling to all fingers and extends to the top of the hand; and
- Her neck had various kinds of bruising, redness, abrasions, lines, and marks.

In addition, Dr. Wayne Ross, a forensic pathologist, examined the medical records of K.N., the SAFE nurse's notes and documentation of injuries, the photos of the scene, photos of K.N. taken by the SAFE nurse and by her family members and police, reviewed the police report and preliminary statements by K.N., and performed an analysis. His conclusions were consistent with K.N.'s account of what happened. Dr. Ross concluded that her various injuries were consistent with: hair being pulled, blunt force trauma, repeated strangulation, and defensive wounds. Dr. Ross also concluded that K.N.'s injuries were inconsistent with consensual intercourse as there were multiple tears, and the injuries indicate a severe amount of force was used and penetration was significant and severe. In addition, Dr. Ross also testified that his findings are inconsistent with rough sex, for the following reasons.

1. K.N. was repeatedly beaten;
2. K.N. had bruises all over her body;
3. K.N. had traumatic alopecia where her hair had been torn from her head;
4. K.N. had bruises all over her chest;
5. There were at least five (5) areas of strangulation to the neck;
6. There were bruises all over her body; and
7. The tears down at the vaginal introitus are inconsistent with rough sex.

… On September 3, 2013, a three-day jury trial commenced. On September 5, 2013, the jury found Appellant guilty of aggravated assault, rape by forcible compulsion, aggravated indecent assault by forcible compulsion, and unlawful restraint. The jury found Appellant not guilty of attempted murder. The remaining charges were *nolle prossed*. ... Thereafter, on December 16, 2013, the trial

court sentenced Appellant to 26½ to 53 years' imprisonment. …
Appellant filed a timely notice of appeal on May 21, 2014.

*Commonwealth v. McKenzie*, 121 A.3d 1121 (Pa. Super. 2015) (unpublished memorandum at *1-3) (citations and footnotes omitted). This Court affirmed Appellant's judgment of sentence on appeal on April 6, 2015. *Id.* Appellant did not pursue further direct appellate review.

On March 29, 2016, Appellant *pro se* timely filed a PCRA petition. In his *pro se* PCRA petition, Appellant averred, *inter alia*, that his trial counsel[1] was ineffective because counsel did not retain an expert witness despite the court's granting Appellant funds to do so. PCRA Petition, 3/29/2016, at 4. Subsequently, Scott McCabe, Esquire was appointed to represent Appellant. On December 12, 2016, Attorney McCabe filed a petition to withdraw accompanied by a no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Appellant did not file a response to Attorney McCabe's petition to withdraw. On February 16, 2017, the PCRA court granted Attorney McCabe's petition, and issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907.

---

[1] Several court-appointed attorneys acted as trial counsel at various points in the proceedings: his initial counsel, Thomas Gregory, Esquire, who represented him until new counsel was appointed at Appellant's request in November 2012; Joshua Neiderhiser, Esquire, who represented him until the trial court granted Attorney Neiderhiser's motion for withdrawal in April 2013; and Heather Reiner, Esquire, who represented Appellant at trial.

The PCRA court initially dismissed Appellant's petition in a March 10, 2017 order, but it rescinded the order after Appellant filed a motion for an extension of time to respond, which averred the notice was not mailed promptly. Appellant *pro se* filed a response on April 4, 2017. Subsequently, on April 26, 2017, privately-retained counsel Todd Mosser, Esquire, filed a motion seeking permission to file an amended response to the 907(b) notice on Appellant's behalf. The PCRA court did not rule on Attorney Mosser's motion and issued an order on April 28, 2017, denying Appellant's PCRA petition. Appellant, through Attorney Mosser, filed a timely notice of appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents one issue on appeal: "Should this matter be remanded so that [Appellant's] counsel can file an advocate's PCRA petition because neither prior court[-]appointed [PCRA] counsel nor the PCRA [c]ourt adequately addressed [Appellant's] claim that a defense expert should have been hired and presented?" Appellant's Brief at 4.

On appeal, Appellant contends that PCRA counsel failed to explain "why and how" this issue lacked merit in his no-merit letter, and, therefore, counsel's analysis was deficient pursuant to ***Turner/Finley***. Appellant's Brief at 10. According to Appellant, PCRA counsel had a "duty to investigate why an expert was sought and why funds for same was approved in the first place,"

but PCRA counsel failed to do so. *Id.* Therefore, Appellant concludes that the

PCRA court erred by permitting counsel to withdraw.[2] *Id.* at 7.

---

[2] Arguably, Appellant raised before the PCRA court in the first instance his claim that the court erred in permitting PCRA counsel to withdraw due to counsel's failure to comply with **Turner**/**Finley**. **Commonwealth v. Rykard**, 55 A.3d 1177, 1184 (Pa.Super. 2012). Although Appellant did not state his claim in clear, plain terms in his *pro se* response to the PCRA court's Pa.R.Crim.P. 907 notice, he does refer generally to the failure to hire an expert and deficiencies in PCRA counsel's compliance with his **Turner**/**Finley** duties. Response to Pa.R.Crim.P. 907(b) Notice, 4/12/2017, at 6, 8 (pagination supplied).

It is more debatable as to whether Appellant stated this issue in sufficient detail in his counseled concise statement pursuant to Pa.R.A.P. 1925(b). The concise statement does not refer to the deficiencies in PCRA counsel's **Turner**/**Finley** response in precise, clear terms, despite this being the crux of the claim he sets forth in his brief. **Compare** Concise Statement, 6/8/2017, at 1-2 **with** Appellant's Brief at 7-10. Instead, in his concise statement, Appellant focuses on the PCRA court's dismissal of his petition notwithstanding the alleged existence of meritorious claims. Concise Statement, 6/8/2017, at 1-2. With respect to an expert, Appellant specifically contends trial counsel was ineffective by not hiring an expert to demonstrate that K.N.'s injuries were from an altercation with another actor that pre-dated the incident at issue. Concise Statement, 6/8/2017, at 1. Yet nowhere in his brief does Appellant mention the need for an expert to prove K.N. sustained the injuries in a previous altercation. Instead, Appellant suggests an expert was necessary to prove that the injuries were the result of K.N.'s unspecified medical condition involving the vaginal area or rough-but-consensual sex between K.N. and Appellant. Appellant's Brief at 9-10.

Rather than finding waiver due to his concise statement, we determine that the issue Appellant presents on appeal fails on the merits because his PCRA counsel complied with **Turner**/**Finley** as discussed *supra*. Additionally, Appellant has waived any argument regarding the PCRA court's dismissal of his petition based upon the merit of his underlying claim of trial counsel ineffectiveness due to Appellant's failure to develop this argument in his brief. Appellant did not attempt to offer analysis or law demonstrating that the PCRA court was incorrect in concluding that his underlying claim lacked merit.

Although there is overlap between the claims, a claim that a PCRA court erred as a matter of law in permitting PCRA counsel to withdraw is distinct from a claim that PCRA counsel was ineffective. **See Rykard**, 55 A.3d at 1184. Whether PCRA counsel and the PCRA court complied with the mandates of **Turner/Finley** is a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary. **Id.** at 1183–84.

An indigent PCRA petitioner has a rule-based right to counsel for a first PCRA petition. Pa.R.Crim.P. 904(C). Counsel has a duty either to (1) amend the petitioner's *pro se* petition and present the petitioner's claims in acceptable legal terms, or (2) certify that the claims lack merit by complying with the mandates of **Turner/Finley**. **Commonwealth v. Cherry**, 155 A.3d 1080, 1082-83 (Pa. Super. 2017). This Court has stated that **Turner/Finley** requires counsel to review the case zealously and subsequently

> submit a "no-merit" letter to the trial court … detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter[]; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> If counsel fails to satisfy the foregoing technical prerequisites of **Turner**/**Finley**, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper **Turner**/**Finley** request ….

However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of **Turner**/**Finley**, the [PCRA court] must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

In the instant case, Attorney McCabe submitted an 18-page letter detailing his analysis of why Appellant's claims lacked merit. No-Merit Letter, 12/12/2016. Attorney McCabe first detailed the materials he reviewed in his assessment of the case. **Id.** at 2. He then set forth correctly the scope and standard of judicial review, followed by a detailed account of the procedural history. **Id.** at 2-6. Attorney McCabe then listed eleven issues Appellant wanted to have Attorney McCabe review as identified by Appellant in his March 29, 2016 PCRA petition and subsequent correspondence to Attorney McCabe. **Id.** at 6-18. Following each issue is a discussion of why Attorney McCabe believed the issue lacked merit, with specific citations or references to the record or applicable law. **Id.**

Included in the issues discussed by Attorney McCabe is prior counsel's failure to employ an expert witness to assist Appellant in his defense. **Id.** at 14. Attorney McCabe noted that Appellant's original trial counsel, Attorney Gregory, had obtained funds to employ an expert shortly before Attorney Gregory was relieved of his duties at Appellant's request. **Id.** Although the

record indicated that Attorney Gregory "made efforts to employ a forensic pathologist," the efforts ceased after Attorney Gregory withdrew from the case. *Id.* Attorney McCabe informed Appellant of his belief that it was not clear what type of expert testimony would have been relevant to Appellant's defense.[3] *Id.* Attorney McCabe concluded, "[s]imply because the trial court approve[d] the expenditure of public money for an expert witness does not mean that an expert witness from some discipline was required to testify in [Appellant's] defense at trial." *Id.*

Despite Attorney McCabe's informing Appellant that he had the right to immediately proceed *pro se* or with private counsel, *see id.* at 18, Appellant did not file a response to Attorney McCabe's motion to withdraw or no-merit letter.

Subsequently, in its Pa.R.Crim.P. 907 notice, the PCRA court indicated it conducted an independent review of the record and determined there were no issues of merit. Notice Pursuant to Pa.R.Crim.P. 907, 2/26/2017, at 1. The PCRA court agreed with Attorney McCabe that failure to obtain an expert after receiving funds to do so does not establish trial counsel's ineffectiveness *per se*. *Id.* at 3. The PCRA court also noted that Appellant did not indicate

---

[3] Related to Appellant's original contention that an expert could have helped prove a defense based upon K.N.'s actually sustaining her injuries in a previous altercation with another person, according to Attorney McCabe's review of the record, a private investigator hired by Appellant investigated this defense theory, but found no factual support to suggest K.N. was injured in the previous incident. *Id.* at 16-17.

what type of defense expert could have advanced his rough-but-consensual sex defense theory, and, therefore, he failed to demonstrate that his claim has arguable merit. *Id.* at 3-4. Finally, based upon Appellant's failure to indicate how employing an expert would have changed the outcome at trial, the PCRA court concluded that Appellant did not establish prejudice. *Id.* In short, the PCRA court determined Appellant's claim of trial counsel ineffectiveness had no merit, and could not serve as a basis for refusing to discharge PCRA counsel.

After our review of the record before us and the arguments advanced by Appellant, we conclude Appellant has not convinced us that Attorney McCabe failed to discharge his *Turner/Finley* duties appropriately. Attorney McCabe thoroughly detailed the nature and extent of his diligent review of the case, listed each issue which Appellant wanted to have reviewed, explained why and how those issues lacked merit, advised Appellant of his immediate right to proceed *pro se* or with new counsel, and requested permission to withdraw after sending a copy of the no-merit letter and a petition to withdraw to Appellant. *Wrecks*, 931 A.2d at 721.

According to his no-merit letter, Attorney McCabe did in fact review the record and correspondence from Appellant to determine whether an expert should have been retained, and found nothing to support Appellant's contention that his trial counsel was ineffective for failing to obtain an expert. Nowhere in Appellant's PCRA petition, nor his response to the Pa.R.Crim.P.

907 notice, nor his brief, does Appellant specify the name of a specific expert willing to support his defense theories whom trial counsel knew or should have known about and utilized, let alone the specialty of said expert beyond the generic category of "medical expert." Appellant's Brief at 9-10. Appellant also does not cite to any law supporting his contention that *Turner* or *Finley* required Attorney McCabe to investigate any further to determine if trial counsel was ineffective for failing to obtain an unspecified expert in an unspecified area of expertise to prove shifting defense theories. To the contrary, *Turner*

> does not mandate that counsel launch into an extra-record investigation of every claim raised by a PCRA petitioner on collateral attack. … Compelling counsel to undertake a potentially exhaustive investigation where counsel has concluded that there is no merit to the claim - and where there is not even the barest indication that such an investigation will prove fruitful - would not serve the ends of justice.

*Commonwealth v. Porter*, 728 A.2d 890, 895 (Pa. 1999).

Based on the foregoing, we affirm the PCRA court's dismissal of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2018

- 11 -