J-S40037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ERVIN SPURIEL | : | |
| Appellant | : | No. 1281 EDA 2019 |

Appeal from the PCRA Order Entered April 1, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001983-2011

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED SEPTEMBER 29, 2020**

Appellant, Ervin Spuriel, appeals from the order entered April 1, 2019, that denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court previously set forth the facts and procedural history underlying this appeal as follows:

> On July 10, 2010, at approximately 10:18 p.m., Jamal Parker was driving down 21st Street towards Mifflin Street in South Philadelphia.  Mr. Parker saw a friend, Marquis Gilliard, walking down the street, and stopped his car briefly to talk to him.  Mr. Parker then continued driving down the block and got out of the car.  Mr. Parker approached a group of men that included [Appellant] and [C]o-defendant [Chaz] Henry [("Co-defendant Henry")], who had sold drugs for Mr. Parker, along with

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

Andrew Fairey, Antione Smith, and [Co-defendant Henry's] brother Devon Henry [("Devon")]. [Co-defendant Henry] called over to Mr. Parker and acted as though he was going to give Mr. Parker money. Co-defendant Henry then pulled a gun from his waist and began chasing Mr. Parker, shooting him. [Appellant] approached Mr. Parker and also shot him, after which Mr. Parker collapsed to the ground. [Appellant] continued to shoot Mr. Parker in the back after he fell. [Appellant], [C]o-defendant Henry, [Devon], Mr. Fairey, and Mr. Smith all fled the scene.

Police arrived and transported Mr. Parker to the University of Pennsylvania Hospital, where he was pronounced dead at 10:28 p.m. He had been shot nine times, once each in the head, neck, arm, hip, buttock, thigh, and leg, and twice in the back. The police recovered 11 fired cartridge casings from the scene, eight of which had been fired from the same .40 caliber handgun and three of which had been fired from the same .45 caliber handgun. Two .40 caliber bullets were recovered from Mr. Parker's jaw and throat, and one .45 caliber bullet was recovered from his back. The weapons used in the shooting were not recovered.

Marquis Gilliard was questioned by homicide detectives. He identified [Appellant] and [C]o-defendant Henry, both of whom he knew personally, as the people who shot and killed Mr. Parker. Mr. Gilliard told police that the murder was over money, as both [Appellant] and [C]o-defendant Henry owed Mr. Parker money for drugs.

Devon . . . was also questioned by the police and told police that he had witnessed the shooting. He also told police that [Appellant] and [C]o-defendant Henry had talked to him about the shooting after it happened, and that the murder was committed over drug money that they both owed to Mr. Parker.[1]

[1] At trial, Devon claimed that he could not recall giving a statement to the police and disavowed nearly all of the averments in the statement. [N.T.], 12/18/12 at 109-129. However, Devon's signed statement was admitted into evidence at trial through the testimony of Detective James Crone. [N.T.], 12/19/12 at 7-22.

Detectives questioned David Marks, a friend of Mr. Parker, who told them that on the night of the shooting, [Appellant] told him that he had killed Mr. Parker.

[Fairey stated that, on the night of the shooting, he had first seen Appellant "on 20th and Jackson[,]" then later saw him with Co-defendant Henry "on 21st between Mifflin and McKean"; after the shooting, Fairey saw Appellant "where [Parker] got shot." N.T., 12/18/2012, at 63-65. Fairey said nothing about witnessing Appellant leave the scene. *See id.* at 44-82.]

Police recovered two cell phones from the scene of the shooting, both of which belonged to Mr. Parker. From one of these phones, they recovered several confrontational text message exchanges between [Appellant] and Mr. Parker, one of which, from [Appellant], that stated, "After this I'm done. One minute you act like my man then you act like you don't care. I'll give you your dough."

Mr. Parker had also called [Appellant] two times immediately prior to the shooting, once at 10:13 p.m. and once at 10:14 p.m. [Appellant] and [C]o-defendant Henry were arrested.

Trial court opinion, 5/23/13 at 2-4 (citations to the record omitted). The Commonwealth also introduced the testimony of Officer Margaret McGrory concerning her investigation into [A]ppellant's sales of crack cocaine; the investigation was still open, and [A]ppellant had not been convicted of any crime. [N.T.], 12/19/12 at 75-87. She detailed six separate purchases orchestrated by a confidential informant, which occurred approximately four months prior to the murder.

At trial, [A]ppellant denied any part in the victim's death. He argued the Commonwealth's witnesses were unreliable and averred that they accused him to deflect attention from themselves. Appellant testified that he bought crack in bulk, cooked it, and sold it for profit. [N.T.], 12/20/12 at 141-142. He denied that he bought crack from Parker and denied that he was in debt to Parker, with the exception of one point in time when he owed Parker $175 for a YMCA membership. *Id.* at 142-146. Appellant claimed that his text to Parker about "[a]ll the fucking bread" he made for him referred to marijuana business he sent to Parker. *Id.* at 146.

- 3 -

Appellant denied shooting the victim and testified that he was at a cookout a block away from the murder and could not get any of the approximately 15 people who were with him to testify on his behalf. *Id.* at 163-170. The parties stipulated that [A]ppellant had two prior adjudications of delinquency for ***crimen falsi*** offenses. *Id.* at 206. The parties also stipulated that neither [A]ppellant nor [C]o-defendant Henry was licensed to carry a firearm and that [C]o-defendant Henry had been convicted for selling drugs.

Following a jury trial, [A]ppellant was convicted of the above-stated charges on December 21, 2012. On January 11, 2013, [A]ppellant was sentenced to a mandatory term of life imprisonment for first-degree murder and a cumulative concurrent sentence of 21 to 42 years for the other offenses.[2] [A] timely appeal followed.

> [2] Co-defendant Henry was convicted of the same crimes and sentenced to a mandatory term of life imprisonment for first-degree murder and a cumulative concurrent sentence of 21 to 45 years for the remaining offenses. A panel of this [C]ourt affirmed the judgment of sentence on direct appeal. ***Commonwealth v. Henry***, No. 202 EDA 2013, unpublished memorandum (Pa.Super. filed May 16, 2014).

***Commonwealth v. Spuriel***, No. 603 EDA 2013, unpublished memorandum at 1-4 (Pa. Super. filed September 18, 2014) (some formatting). This Court affirmed Appellant's judgment of sentence. *Id.* at 1. Appellant filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on February 24, 2015.

On April 14, 2016, Appellant filed a counseled, first, timely PCRA petition raising the following claims:

> I. Trial counsel provided ineffective assistance in failing to object and seek appropriate limitations where the scope and extent of the Commonwealth's 404(b) evidence vastly exceeded the discrete purpose for which the trial court authorized its admission.

II.     Trial counsel provided ineffective assistance where counsel failed to seek a contemporaneous judicial instruction regarding the limited purpose for which the factfinder could consider the Commonwealth's 404(b) evidence.

III.    Trial counsel provided ineffective assistance where he failed to request or propose a judicial instruction explaining the purpose and effect of alibi evidence and failed to object to the omission of such an instruction.

IV.    Trial counsel provided ineffective assistance where he failed to request curative instructions or to object to the lack of curative instructions with respect to the prosecutor's improper closing statement concerning alibi evidence.

V.     Trial counsel provided ineffective assistance where he failed to call an alibi witness, about whom [Appellant] had informed him, who could have corroborated [Appellant]'s testimony.

PCRA Petition, 4/14/2016, at ii-iii; ***see also id.*** at 20, 26, 30, 32, 35.  The "alibi witness" mentioned in Appellant's fifth issue was Roger Tyrone Whitaker, who Appellant contended "could corroborate [Appellant]'s actual whereabouts at the time of the shooting." ***Id.*** at 35.

On April 14, 2017, Appellant requested the PCRA court's permission to amend his PCRA petition and attached a copy of the proposed amended PCRA petition.  On April 17, 2017, the PCRA court granted permission for Appellant to file the amended PCRA petition.  In his amended PCRA petition, Appellant added a claim that "[t]rial counsel provided ineffective assistance where he failed to consult fully with his client regarding his right to present character evidence and failed to investigate and present character witnesses." Amended PCRA Petition, 4/14/2017, at 7.

Thereafter, the [PCRA c]ourt granted an evidentiary hearing solely on the issue of whether [trial counsel] was ineffective for failing to call alibi witness Roger Tyrone Whitaker.  Before the hearing,

- 5 -

> however, on February 6, 2018, [Appellant's original PCRA counsel] filed a motion to withdraw as counsel, which the [PCRA c]ourt granted on February 12, 2018.

PCRA Court Opinion, dated July 10, 2019, at 2. The PCRA court then appointed a second PCRA counsel. On March 29, 2018, a third PCRA counsel entered his appearance on Appellant's behalf, and the second PCRA counsel was relieved.

The PCRA court thereafter scheduled and continued an evidentiary hearing multiple times. On June 15 and July 18, 2018, the PCRA court finally held evidentiary hearings, during which the PCRA court "agreed to hear evidence on [Appellant]'s additional claims that [trial counsel] was ineffective for failing to request an alibi jury instruction and for failing to present character evidence." *Id.*

Trial counsel, Whitaker, and Appellant testified at the hearings. *Id.* "During his testimony on July 18, 2018, [Appellant] claimed that surveillance video existed that proved that he was not present at the scene of the shooting and that the video contradicted the testimony of several of the Commonwealth's witnesses." *Id.* The trial court noted that Appellant had "not raise[d] a claim related to the video prior to the hearing[.]" *Id.*; *see also* N.T., 7/18/2018, at 99 ("I don't see a claim about the video in your petition."). The PCRA court then "invited submission of proof that a video existed that provided [Appellant] with an alibi." PCRA Court Opinion, dated July 10, 2019, at 2. The court continued: "He **has to** amend the petition. . . . **If** [the video] showed [what Appellant claimed], then I **would** let him amend the claim and raise that." *Id.* at 111-12 (emphasis added). It

- 6 -

concluded, "I will never deny a motion to amend a petition. . . . I will give you whatever date you ask for to let me know whether you will rest on what you presented [or] **ask to amend** the petition[.]" *Id.* at 117, 119 (emphasis added).

On December 19, 2018, Appellant filed a second amended PCRA petition, in which he added that his trial counsel was also ineffective for failing to introduce a "video tape as corroborating evidence in his defense." Second Amended PCRA Petition, 12/19/2018, at 1. There is no indication in the certified record that the PCRA court explicitly granted permission for Appellant to file this second amended PCRA petition, and, as the PCRA court noted, the second amended PCRA petition "did not proffer any evidence that the video provided [Appellant] with an alibi." PCRA Court Opinion, dated July 10, 2019, at 2.

"On April 1, 2019, after issuing findings of fact and conclusions of law on the record, the [PCRA Court entered an order dismissing [Appellant]'s petition." *Id.* The next day, Appellant's third PCRA counsel withdrew, and the PCRA court appointed a fourth PCRA counsel to represent Appellant on appeal. On April 29, 2019, Appellant filed this timely appeal.[2]

Appellant presents only the following two issues for our review:

> [I.]  Did the PCRA court err in determining that trial counsel was not ineffective for failing to present video evidence where such evidence would have directly refuted the version of events

---

[2] Appellant filed his statement of errors complained of on appeal on June 11, 2019. The PCRA court entered its opinion on July 10, 2019.

provided to police by Commonwealth witnesses Marquis Gill[i]ard, Andre Fairey and Devon Henry as to [Appellant]'s direction of travel after the shooting?

[II.] Did the PCRA court err in determining that trial counsel was not ineffective for failing to present the testimony of witness Roger Tyrone Whitaker where Whitaker's testimony would have directly refuted the version of events provided to police by Commonwealth witnesses Marquis Gill[i]ard, Andre Fairey and Devon Henry as to [Appellant]'s direction of travel after the shooting?

Appellant's Brief at 3 (issues reordered to facilitate disposition) (trial court answers omitted).

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." *Commonwealth v. Medina*, 209 A.3d 992, 996 (Pa. Super. 2019) (quoting *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018)), *reargument denied* (July 17, 2019).

Preliminarily, we note that Appellant's claim that trial counsel was "ineffective for failing to present video evidence[,]" Appellant's Brief at 13, was not included in his original PCRA petition or his first amended PCRA petition. *See generally* PCRA Petition, 4/14/2016; Amended PCRA Petition, 4/14/2017. Appellant only included this challenge in his second amended PCRA petition. Second Amended PCRA Petition, 12/19/2018, at 1. However, he never received the PCRA court's permission to amend his PCRA petition for a second time, and "the law still requires leave of court to submit an amended petition." *Commonwealth v. Rykard*, 55 A.3d 1177, 1189 (Pa. Super. 2012) (citing Pa.R.Crim.P. 905(A)). The language used by the PCRA court during

the evidentiary hearing left no doubt that the court did not consider Appellant's claim about the video included in his original or amended PCRA petition, telling Appellant that he still "has to amend the petition" and that the court "**would let him amend the claim and raise it**" if he were to "**ask to amend** the petition" in the future – but not that the court **had** granted permission for Appellant to file an amended petition. N.T., 7/18/2018, at 111-12, 119; *see also id.* at 117 (PCRA court "**will** never deny a motion to amend a petition"). As Appellant never received permission to file his second amended petition, he has waived the sole additional claim contained therein, alleging ineffective assistance of trial counsel for failing to introduce video evidence. *Rykard*, 55 A.3d at 1189.

> Appellant's only remaining issue hence is whether --

> [t]he PCRA court erred in determining that trial counsel was not ineffective for failing to present the testimony of witness Roger Tyrone Whitaker where Whitaker's testimony would have directly refuted the version of events provided to police by Commonwealth witnesses . . . as to [Appellant]'s direction of travel after the shooting.

Appellant's Brief at 11.

> In establishing whether defense counsel was ineffective for failing to call witnesses, [A]ppellant must . . . prove (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Medina*, 209 A.3d at 998 (quoting *Commonwealth v. Treiber*, 121 A.3d 435, 463–64 (Pa. 2015)).

Pursuant to our review of the record, we find that Appellant has failed to establish that "the absence of" Whitaker's testimony "was so prejudicial as to have denied [Appellant] a fair trial." *Id.* As Appellant himself acknowledges, the Commonwealth presented testimony or statements from two eyewitnesses – Gilliard and Devon[3] – compared to Appellant's one witness. While, admittedly, jurors are not supposed to determine facts based on the quantity of witnesses presented by each party, the Commonwealth's eyewitnesses corroborated each other, consequently enhancing each one's credibility.

Additionally, these two witnesses gave more information than just the direction in which Appellant ran after the shooting. Gilliard identified Appellant and Co-defendant Henry – both of whom he knew personally prior to the murder – as the shooters. *Spuriel*, No. 603 EDA 2013 at 2. He also testified that the motive for the killing was money, as both Appellant and Co-defendant Henry owed Parker money for drugs. *Id.* Devon stated that Appellant and Co-defendant Henry had discussed the killing with him after the fact, and he agreed with Gilliard that the murder was committed over money that the co-defendants owed Parker for drugs. *Id.*

---

[3] Appellant's brief also suggests that Fairey gave a statement about Appellant's direction of travel after the shooting, but, after reviewing the notes of testimony, we find no such account by Fairey. *See* N.T., 12/18/2012, at 44-82. The closest statement by Fairey is that he saw Appellant "around where [Parker] got shot" immediately after the murder, *id.* at 65, but nothing about witnessing Appellant flee the scene.

Furthermore, assuming Whitaker's testimony about this minor detail of the direction in which Appellant left the scene of the crime somehow caused the jury to discredit all of Gilliard's and Devon's testimony, the Commonwealth still presented sufficient evidence for a jury to convict Appellant of murder and related offenses. First, Marks informed the police that Appellant told him that he had killed Parker. *Id.* at 2-3. Additionally, the Commonwealth introduced hostile text messages from Appellant to Parker, followed by a text message from Appellant luring Parker to the location of the shooting with the promise that he would pay Parker the money that he owed the victim. *Id.* at 3 (citation omitted). The Commonwealth also produced telephone records showing that, less than five minutes before he was killed, Parker had called Appellant twice. *Id.* (citation to the record omitted). The Commonwealth had presented additional evidence of Appellant's role in the drug trade – which was a contributing factor in the murder – through the testimony of Office McGrory. *Id.* (citing N.T., 12/19/2012, at 75-87). In addition, Appellant himself admitted that he had bought and sold drugs, and the parties stipulated that Co-defendant Henry had a prior conviction for selling drugs, thereby establishing that Appellant also associated with a convicted drug dealer. *Id.* at 3-4 (citing N.T., 12/20/2012, at 141-42). Moreover, the fact that Appellant alleged that he was at a cookout with 15 other people at the time of the shooting but could not produce a single corroborating witness, combined with a stipulation about his prior adjudications for *crimen falsi*, likely caused the

jury to doubt Appellant's credibility.  *Id.* at 4 (citing N.T., 12/20/2012, at 163-70, 206).

Accordingly, even without the testimony of Gilliard and Devon, the Commonwealth still presented testimony that Appellant admitted to the crimes, physical evidence that Appellant persuaded Parker to come to the location of the crime, and testimony and stipulation as to Appellant's role in the drug trade that in turn established motive, all of which, in combination with Appellant's questionable veracity, was sufficient for a jury to find Appellant guilty of all of the crimes of which he was convicted.  *See* N.T., 12/19/2012, at 75-87; N.T., 12/20/2012, at 141-42, 163-70, 206; *Spuriel*, No. 603 EDA 2013, at 2-4; Trial Court Opinion, dated May 23, 2013, at 2-4.

"Prejudice" in this context is defined as "a reasonable probability of a different outcome if not for counsel's error."  *Medina*, 209 A.3d at 1000. Given the strength of the Commonwealth's case (with or without Gilliard's and Devon's testimony), Appellant cannot establish a reasonable probability of a different outcome if trial counsel had called Whitaker as a witness.  Hence, as Appellant cannot establish that the absence of Whitaker's testimony was so prejudicial as to deny him a fair trial, he cannot establish that trial counsel was ineffective for failing to call Whitaker as a witness at trial.  *Id.* at 998.

For the reasons given above, we conclude that Appellant's issues raised on appeal are either waived or meritless.  Having discerned no error of law, we affirm the order below.  *See id.* at 996.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/29/20