J-S04034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON BRUNSON | : | |
| | : | |
| Appellant | : | No. 1826 EDA 2021 |

Appeal from the PCRA Order Entered August 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004492-2015

BEFORE:  MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:  **FILED FEBRUARY 22, 2023**

Aaron Brunson (Brunson) appeals from the August 19, 2021 order of the Court of Common Pleas of Philadelphia County (PCRA court) dismissing his petition filed pursuant to the Post-Conviction Relief Act.[1]  We affirm.

**I.**

The PCRA court summarized the facts of this case as follows:

The Commonwealth of Pennsylvania soundly established beyond a reasonable doubt that in the early morning hours of February 27, 2015, the jointly tried defendants, [] Brunson, Haneef Tuck, along with two other males, forcibly invaded a tattoo parlor located at 1932 N. 31st Street and robbed business owner Kasheef Murray and his friend Isaiah Brown.  On the night of February 26, 2015 and into the early morning of February 27, 2015, victims Murray and Brown were gambling together at the SugarHouse

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 *et seq*.

Casino in Philadelphia. Each won several hundred dollars. [] Brunson and [] Tuck were also at the casino, along with Sharique Orr and Ernest Myers, and had observed the victims win money. The complainant Isaiah Brown had been friendly with [Brunson] or his cohorts.

Around 4:17 a.m. on February 27, 2015, after observing the complainants win money at the casino, [Brunson] and his co-conspirators followed Mr. Murray and Mr. Brown out of the casino. Casino video feeds depicted that the complainants had taken a cab to Murray's tattoo parlor in the area of 31st and Berks Street in the City and County of Philadelphia. Casino video feeds also depicted [Brunson] and his cohort immediately leave the casino parking lot and follow the complainants' cab.

Police sourced real time video feeds then displayed [Brunson's] vehicle circle the block where the victims had alighted. The same video feed had also shown a man with a build strikingly similar to [Brunson's] portly stature, walk and peek around the building corner just before the apartment had been forcibly entered. The victim Kasheef Murray testified convincingly at trial that while he and Isaiah Brown were relaxing in the tattoo parlor, someone kicked in the front door and four men entered. Three out of four invading men were wearing some handkerchief or shirt over their face to mask their identity and all four of them were allegedly armed with guns.

Immediately upon forcibly entering the tattoo parlor, one of the men shot complainant Kasheef Murray in the hip. One of the intruders specifically demanded the money that the men had won at the casino. The intruders stripped both victims of their clothing and took cash money, an iPhone, Murray's iPad and Brown's wallet. After the attack, both victims were transported to Temple Hospital for immediate emergency treatment.

While in the emergency room, complainant Murray gave a statement to Officer Patrick Heron. At trial, Officer Patrick Heron (Badge #5205) testified as to what Murray had told him:

> **OFFICER HERON**: He told me that ... he was at the casinos earlier. And after the casinos, him and his buddies went to a tattoo parlor on North 32nd [sic] Street to chill out afterwards... While inside there he, all of a sudden, heard several kicks at the front door. Next, he stated that

the front door opened up. Four black males armed with guns entered. They had red and white shirts on their face. One of the black males said, "Give up your winnings. Give up the money you won at the casino." Next thing that Mr. Murray knew, he heard a gunshot. He told me that the one male stole cash from him and an iPhone and an iPad—iPod, I believe.

Later, when Detective Michael Rocks presented a photo array to Murray, he identified [] Tuck as one of the men from the casino.

Based on Murray's statement, police obtained video surveillance from the SugarHouse Casino. The video showed [] Brunson and [] Tuck exiting the casino, then complainants Murray and Brown exiting the casino and entering a cab, followed by Orr and Myers exiting the casino and entering a white Ford. Shortly after [Brunson] and Tuck left the casino, the video displays a silver Jeep lingering in an overflow parking lot prior to Murray and Brown's cab leaving. Police also recovered video footage from a surveillance camera near the complainant Murray's tattoo parlor which showed a white Ford car and silver Jeep in the area around the time of the shooting robbery.

Officer Jayson Troccoli, who had known [Brunson] and [] Tuck from his district, identified the men from still photographs of the casino surveillance footage. Officer Troccoli located a silver Jeep Cherokee consistent with the vehicle depicted in the surveillance video and subsequently conducted an automobile stop. When he approached the driver's side of the vehicle, he recognized [Brunson] as the driver. While executing a search warrant, the police recovered complainant Brown's wallet from the Jeep. Following his arrest, [Brunson] gave a written confession to Detective Rocks in which he identified his co-conspirators.

After arresting [Brunson], police obtained a search warrant for cell phone records, call logs, and cell site tower information for the phones recovered from [Brunson] and Tuck. The call logs from the phone reflected that from 4:18 a.m. to 5:20 a.m. on the morning of the robbery, there were nine (9) separate phone calls between [Brunson's] phone and a phone number subscribed to Orr. Historical cell site analysis also showed that the phones recovered from [Brunson] and Tuck were in the same general vicinity in areas of South Philadelphia and the area of the crime

scene, from the period of 4:00 a.m. and 6:00 a.m. on the morning of the robbery.

PCRA Court Opinion, 4/25/22, at 5-8 (citations omitted). Following a jury trial, Brunson was convicted of aggravated assault, burglary, two counts of robbery, two counts of conspiracy, criminal trespass and two counts of theft.[2] He was sentenced to an aggregate of 25 to 50 years' imprisonment. He timely appealed and this Court affirmed the judgment of sentence. **Commonwealth v. Brunson**, 52 EDA 2017, at *7 (Pa. Super. Oct. 21, 2019) (unpublished memorandum), *allocator denied*, 573 EAL 2019 (Pa. April 21, 2020).

Brunson timely filed the instant PCRA petition and the PCRA court appointed counsel. Counsel filed an amended petition and, relevant to this appeal, raised three claims of ineffective assistance of counsel. First, he argued that counsel had failed to investigate an exculpatory witness and call her at trial. In support, he attached a statement from Angela Newsome (Newsome), who claimed that she lived in the row of homes that included the address where the shooting occurred.[3] She claimed that the address never housed a tattoo parlor and no one was inside that address on the night of the

---

[2] 18 Pa.C.S. §§ 2702(a)(1), 3502(a)(3), 3701(a)(1)(i), 3701(a)(1)(ii), 903, 3503(a)(1)(ii), 3921(a).

[3] The statement and petition identified addresses on North 15th Street. As the events in question took place on North 31st Street, the Commonwealth and the PCRA court noted that this appeared to be a typographical error. The statement explained that 1928, 1930 and 1932 North 31st Street are row houses that have separate addresses but are interconnected on the inside.

- 4 -

shooting. However, someone knocked on the door of one of the other homes that night seeking to purchase marijuana. Later, someone knocked on the door at 1928 North 31st Street, said that they had been shot and asked for a ride to the hospital. Newsome did not hear any noise in the house and did not think a shooting took place inside. She alleged that a black car approached her family members that night and told them not to say anything.

Next, Brunson argued that counsel was ineffective for failing to file a motion to suppress his confession. He contended that he informed counsel that he had swallowed five bags of crack cocaine, totaling approximately 1.5 grams, immediately prior to his arrest. He told detectives that he was having trouble breathing due to the narcotics and they provided him with his asthma medication but did not discontinue the interrogation. He requested that counsel seek to suppress his confession based on the medical issues he was experiencing at the time, but counsel failed to do so.

Finally, he argued that counsel was ineffective in cross-examining Detective Anthony Vega, the Commonwealth's cell site location expert. He argued that counsel should have cross-examined Detective Vega more thoroughly regarding his conclusion that his phone was in the area of the crime scene, why he did not attempt GPS or triangulation to identify a more precise location of the phone, whether network information had been lost by AT&T, and whether the level of cell phone traffic or weather patterns could have affected the data. He contended that trial counsel did not seek an expert

witness to refute Detective Vega's testimony but would not have needed to do so if his cross-examination had been effective.

The Commonwealth filed a motion to dismiss the petition and the PCRA court subsequently issued a notice of intent to dismiss without a hearing based on lack of merit pursuant to Rule of Criminal Procedure 907. Brunson did not file a response and the PCRA court formally dismissed the petition on August 19, 2021. Brunson timely appealed. The PCRA court did not order him to file a concise statement pursuant to Pa. R.A.P. 1925 but has issued an opinion addressing the claims raised in the petition.[4]

## II.

On appeal, Brunson argues that trial counsel was ineffective for three reasons: failure to investigate and call Newsome as a witness, failure to file a motion to suppress his confession, and failure to properly cross-examine Detective Vega. "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable

---

[4] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Brown*, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa. Super. 2018). "Prejudice, in this context, has been repeatedly stated as requiring proof that but for counsel's action or inaction, there was a reasonable probability that the proceeding would have had a different outcome." *Commonwealth v. Diaz*, 226 A.3d 995, 1007 (Pa. 2020).

A petitioner must meaningfully discuss each of the three prongs of the ineffectiveness claim to prove he is entitled to relief. *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 780 (Pa. Super. 2015). "[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). Finally, counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012).

**A.**

We begin with Brunson's claim that trial counsel was ineffective for failing to call Newsome as a witness. To succeed on a claim that counsel was ineffective for failing to call a witness at trial, a PCRA petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Wantz*, 84 A.3d 324, 331 (Pa. Super. 2014) (citation omitted). When analyzing the prejudice prong under our standards for ineffectiveness, we must determine whether there is a reasonable probability that the outcome of the trial would have been different if the witness had testified. *Id.* at 333-34.

Brunson's limited argument, which comprises a single page of his brief, fails to meaningfully address each of the prongs of an ineffectiveness claim. Accordingly, his argument fails on that reason alone. *Reyes-Rodriguez*, *supra*; *Robinson*, *supra*. Moreover, upon review of Newsome's witness certification and the evidence presented at trial, we cannot conclude that Brunson has established that he was prejudiced by counsel's failure to investigate and present her as a witness. Newsome claimed in the statement that there was never a tattoo parlor at 1932 North 31st Street and that she believed a shooting took place outside on the street on the night in question. Whether the address housed a tattoo parlor was irrelevant to whether a shooting occurred there; the alleged motivation for the robbery was not any profits from the tattoo parlor but rather the victims' winnings from the casino. In any event, Detective Rocks verified that the address contained chairs and tattooing equipment during his initial investigation and testified to those facts at trial. Newsome's belief that the address did not contain a legitimate tattoo parlor would not have affected the ultimate resolution of the case.

Newsome's testimony that a shooting took place outside rather than in the building on the night in question likewise would not have affected the outcome of the case given the weight of the countervailing evidence presented at trial. As the PCRA court explained, surveillance video from the casino and North 31st Street, Brunson's cell phone contacts with one of the co-conspirators, the cell site analysis, Brunson's confession and the recovery of a victim's wallet from his vehicle all firmly established his complicity in the robbery. *See* PCRA Court Opinion, 4/25/22, at 12-13. Against this evidence, there is no reasonable probability that Newsome's testimony would have changed the outcome of the trial. *Wantz*, *supra*. No relief is due.

**B.**

Next, Brunson claims that trial counsel was ineffective for failing to file a motion to suppress his confession. In his argument on this claim, Brunson faults the trial court for finding without an evidentiary hearing that trial counsel had a strategic basis for declining to file the motion. He contends that a hearing was necessary to determine whether the omission was reasonable. Brunson does not discuss let alone prove the remaining elements of his ineffectiveness claim: that his suppression claim had arguable merit or that he was prejudiced by counsel's failure to file the motion. This alone precludes him from obtaining relief on this claim, as it is well-established that a petitioner bears the burden of proving each of the three elements of his

ineffectiveness claim. **Reyes-Rodriguez**, **supra**; **Robinson**, **supra**. As he has failed to do so, this issue merits no relief.

In addition, the PCRA court, which sat as the trial court, rejected this claim based on its assessment of Brunson's credibility during his trial testimony. **See** PCRA Court Opinion, 4/25/22, at 13-14. As the PCRA court explained, Brunson testified under oath at trial that he did not make the confession at all and that it was fabricated by detectives wholesale. The PCRA court concluded that his self-serving trial testimony both directly contradicted his claims in his PCRA petition and severely undercut his credibility. **Id.** We may not disturb such a credibility determination on appeal. **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011). Additionally, as discussed in Part II.A, *supra*, the evidence presented at trial firmly established Brunson's guilt even in absence of his confession. Accordingly, we cannot conclude that he was prejudiced by trial counsel's failure to seek to suppress his confession.

### C.

Finally, Brunson argues that trial counsel was deficient in cross-examining Detective Vega regarding the cell site location analysis that placed his cell phone in the vicinity of the crime scene at the time of the robbery. He baldly claims that a more effective cross-examination could have refuted Detective Vega's conclusions. He faults trial counsel for failing to probe into why Detective Vega did not use GPS or triangulation technology to pinpoint

the phones' locations and for failing to establish whether call volume or weather can affect the cell site analysis.

Again, to establish prejudice for the purposes of an ineffectiveness claim, a petitioner must establish a "reasonable probability" that but for counsel's actions or inactions, "the proceeding would have had a different outcome." *Diaz*, *supra*.

> Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution. Thus, the question becomes whether or not defense counsel effectively cross-examined the Commonwealth's expert witness.

*Commonwealth v. Williams*, 141 A.3d 440, 464 (Pa. 2016) (citation omitted). In *Williams*, a capital murder case, an alleged eyewitness to the crimes testified that victims were shot inside a van and tossed outside of the moving vehicle by the defendants. In PCRA proceedings, the defendant introduced expert testimony from a forensic pathologist and a crime scene reconstruction expert to establish that the victims' injuries were inconsistent with that narrative. After hearing this testimony, the trial court concluded that counsel had been ineffective and granted a new trial.

Our Supreme Court agreed and concluded that the defense cross-examination in the initial trial was ineffective based on two factors. First, trial counsel did not question the Commonwealth's medical experts at all, and counsel for co-defendants similarly did not elicit relevant testimony from those

experts that would have undercut the witness's version of events. ***Id.*** Second, at the PCRA hearing stage, the defendant's expert testified that his examination of the victims' wounds and blood flow patterns contradicted the eyewitness testimony. ***Id.*** at 464-65. Because trial counsel failed to challenge the Commonwealth's forensic evidence and present the jury with readily-available evidence that undercut the eyewitness testimony, our Supreme Court held that the cross-examination was ineffective.

Here, our review of the trial transcript reveals that counsel's cross-examination of Detective Vega was abbreviated. He asked for clarification that the cell tower at issue near the crime scene covered a roughly .8 mile range. He also reiterated, as Detective Vega testified on direct examination, that the cell phone analysis could not reveal who was using the phone, the purpose of the calls or what was said. This questioning was in line with the strategy of arguing that Brunson was not among the men who robbed Murray.

However, Brunson does not explain how further cross-examination would have been helpful in disproving the Commonwealth's case or rebutting Detective Vega's testimony. Unlike in ***Williams***, he merely speculates that the weather or amount of cell phone traffic at the time of the robbery could have affected the cell site analysis but did not support this contention with reference to any evidence. Without establishing that the answers to these questions would have inured to his benefit, he cannot claim that he was prejudiced by their omission. ***Williams***, ***supra***, at 466-67. No relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2023